**Paul LOMBARD, Plaintiff,**

v.

**EUNICE KENNEDY SHRIVER CENTER FOR MENTAL RETARDATION, INC., et al., Defendants.**

**Civ. A. No. 80–2848–G.**

United States District Court,
D. Massachusetts.

Feb. 9, 1983.

David Ferleger, Philadelphia, Pa., for plaintiff.

Christopher Worthington, Boston, Mass., for Pearl.

Raymond Kenney, Clement McCarthy, Boston, Mass., for Eunice Kennedy Shriver Center and Medis.

David Gould, Ficksman & Conley, Boston, Mass., for Haessler.

MEMORANDUM AND ORDER DENYING DEFENDANTS' CONSTRUCTIVE MOTIONS TO DISMISS

GARRITY, District Judge.

Paul Lombard, plaintiff, is a mentally retarded person who was a resident of the

Paul A. Dever School (the Dever School), an institution of the Commonwealth of Massachusetts, from July 1966 until October 1979. Plaintiff has brought this action pursuant to federal constitutional and statutory provisions, and pursuant to state law, alleging that he was denied adequate medical care while a resident at the Dever School, that he was subjected to inappropriate medical treatment, and that his property was improperly managed. Defendants include Ellsworth Pearl, Superintendent of the Dever School since January 11, 1977, the Eunice Kennedy Shriver Medical Center for Mental Retardation (the Shriver Center), a private organization which, pursuant to a contract with the Dever School, provided medical services to Dever's residents, Dr. Herbert Haessler, Clinical Director of the Shriver program at the Dever School, and Dr. Gregory Medis, physician for the Shriver program at the Dever School.

Defendants have filed motions to dismiss which concern the relationship between the Shriver Center and the state. Defendants contend that the Shriver Center provided all medical care about which the plaintiff complains, and that because Shriver is a private entity, the state cannot be held accountable for Shriver's acts, and Shriver cannot be held responsible for not conforming with constitutional and statutory requirements applicable only to governmental entities. The issue, in short, is whether the acts and omissions of the Shriver Center constitute state action for the purposes of the Fourteenth Amendment, and whether Shriver acted "under color of law" for the purposes of 42 U.S.C. § 1983.[1] Defendants also contend that the bulk of plaintiff's factual allegations supporting his complaint is barred by the relevant statute of limitations. After hearing oral argument and considering memoranda of law from all par-

ties, we conclude that defendants' objections are without merit. We will consider each in turn.

### State Action

Because this action is before us on a motion to dismiss, we accept as true all material allegations in the complaint. *O'Brien v. DiGrazia,* 544 F.2d 543, 545 (1st Cir.1976). Plaintiff's complaint alleges that on April 24, 1976, the Dever School, a state residential institution for the mentally handicapped, entered into a contract with the private Shriver Center, by which Shriver was to provide medical care to residents at Dever. Medical care was defined as "the provision of preventive care, the management of acute and chronic illness and habilitative care." Among other allegations to the effect that plaintiff was denied rudimentary medical care by defendants, the complaint alleges that beginning in the fall of 1976 defendants began to administer a series of drugs without proper consideration of the effect which such drugs, and sudden changes in the drugs administered, might have on plaintiff.

The question presented is whether the acts and omissions of the private Shriver Center in its provision of medical services to the plaintiff constitute state action. We hold that it does. The critical factor in our decision is the duty of the state to provide adequate medical services to those whose personal freedom is restricted because they reside in state institutions.

■ In *Youngberg v. Romeo,* —— U.S. ——, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Supreme Court considered whether an involuntarily committed resident[2] of a state hospital has a right under the Fourteenth Amendment to adequate medical care, safe living conditions, and freedom from unnec-

---

1. The constitutional and statutory standards are identical. "In cases under § 1983, 'under color of law' has consistently been treated as the same thing as 'state action' required under the Fourteenth Amendment." *Lugar v. Edmondson Oil Co., Inc.,* —— U.S. ——, ——, 102 S.Ct. 2744, 2751, 73 L.Ed.2d 482 (1982) quoting *United States v. Price,* 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 1157 n. 7, 16 L.Ed.2d 267 (1966).

2. "Involuntarily committed" in this context refers to an adult who was committed to a state facility on the petition of his mother and after being found severely retarded after state proceedings.

essary bodily restraints. The Court ruled that such a person has a right to safe conditions of confinement and to freedom from unnecessary bodily restraint. *Id.*, at p. ——, 102 S.Ct. at p. 2458. Extrapolating from the Eighth Amendment rights of prisoners to the Fourteenth Amendment rights of the involuntarily committed, the Court reasoned that "[i]f it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional to confine the involuntarily committed—who may not be punished at all—in unsafe conditions." *Id.* Although the Court did not explicitly decide whether the state bears a similar obligation with respect to medical care, because the state in *Youngberg* conceded such an obligation, we similarly extrapolate from *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), which recognized under the Eighth Amendment "the government's obligation to provide medical care for those whom it is punishing by incarceration," *Id.* at p. 103, 97 S.Ct. at p. 290, and explicitly hold that the Fourteenth Amendment imposes an affirmative obligation on the state to provide adequate medical care for involuntarily committed residents [3] of state mental institutions. It is in the context of this affirmative obligation, established by the Fourteenth Amendment and particularized by the *MARC* consent decree [4] and the series of contracts in which Shriver undertook the task of providing "medical care to the residents of Dever," that the issue of whether Shriver's activities constituted state action must be considered.

■ Prevalent doctrine regarding state action seeks to establish a clear distinction between "private" parties and "public" employees. The characterization as private or public has significant consequences for the circumstances under which acts will be considered "under color of law." A private party's action or decision must be required by a rule of decision imposed by the state before that action or decision will be deemed state action. *See e.g., Blum v. Yaretsky,* —— U.S. ——, 102 S.Ct. 2777, 73 L.Ed.2d 534 (June 25, 1982), where the Supreme Court held that private physicians, in making medical determinations regarding issues which the Medicare program required to be confronted, were not state actors because their rules of decision were principles of sound medical judgment and therefore independent of any rule imposed by the state. A government employee, on the other hand, acts under color of law even if his actions are *proscribed* by applicable regulation. *See, e.g., Monroe v. Pape,* 365 U.S. 117, 184–7, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961).

■ The Shriver Center's contractual role in discharging an affirmative state obligation raises significant questions about the extent to which Shriver can be considered "private" at all. For if the state chose to provide medical care through state employed physicians, their decisions would be considered action under color of law even if contrary to governing regulations. *See, e.g., O'Connor v. Donaldson,* 422 U.S. 563, 577, 95 S.Ct. 2486, 2494, 45 L.Ed.2d 396

---

3. Plaintiff in the instant case, according to the allegations of his complaint, qualifies as "involuntarily committed." Like the plaintiff in *Youngberg,* Paul Lombard was placed in the state hospital by his parents and was mentally retarded. When originally placed in the hospital, he was an eight year old child, thus fully dependent on the hospital for care and subsistence. Plaintiff, therefore, was at all relevant times a person without the will or power independently to pursue his interests and assert his rights.

4. That the state bore such an affirmative obligation is confirmed in this case by the series of consent decrees entered in *Massachusetts Association of Retarded Citizens v. Dukakis,*

*(MARC),* 75–5210–T, which establish a framework for providing services to residents of the Dever School "in accordance with federal and state constitutional standards." The state defendants "agree[d] to enter a medical contract with Shriver Medical Center for fiscal year 1978 in the amount of $1,350,000" "in order to provide a more comprehensive medical and health care program for residents." *See* Interim Consent Decree filed July 25, 1977. The state defendants were required to "provide or cause to be provided adequate medical, dental, audiological, neurological, pharmacological, and other health related services for residents and clients as necessary." *See* decree entered by the court on February 10, 1979.

(1975), where the Court confirmed the standard of a physician-administrator's liability in a state psychiatric hospital. The "relevant question ... is whether O'Connor 'knew or reasonably should have known that the action he took within the sphere of his official responsibility would involve the [plaintiff's] constitutional rights.'" *Id.*

Under the circumstances of this case, it would be empty formalism to treat the Shriver Center as anything but the equivalent of a governmental agency for the purposes of 42 U.S.C. § 1983. Whether a physician is directly on the state payroll, as in *O'Connor,* or paid indirectly by contract, the dispositive issue concerns the trilateral relationship among the state, the private defendant, and the plaintiff. Because the state bore an affirmative obligation to provide adequate medical care to plaintiff, because the state delegated that function to the Shriver Center, and because Shriver voluntarily assumed that obligation by contract, Shriver must be considered to have acted under color of law, and its acts and omissions must be considered actions of the state. For if Shriver were not held so responsible, the state could avoid its constitutional obligations simply by delegating governmental functions to private entities.

Such a treatment of "private" parties as the functional equivalents of state actors is not unprecedented in other contexts. The general principle that private entities act under color of law only if their actions are compelled by rules of decisions imposed by the state also does not apply when such private parties perform functions which are traditionally the exclusive province of the state. In *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946), for example, the Court held that a state could not enforce a private "company town's" restriction of religious expression. The operation of a town, regardless of its ownership, was deemed "essentially a public function." *Id.,* at 506, 66 S.Ct. at 278. State enforcement of the town's restrictions would violate the constitution. The Court did not inquire whether the private rule was compelled by state standards as it did in *Blum v. Yaretsky, supra,* but focused entirely on the degree to which a private town could be deemed the equivalent of a public town.

Similarly, in *Janusaitis v. Middlebury Volunteer Fire Department,* 607 F.2d 17 (2 Cir.1979), the Second Circuit held that a private volunteer fire department's dismissal of a member should be scrutinized according to First Amendment standards. The court found state action not because of any peripheral attachment of the fire department to the state, such as funding or regulation, or because the state imposed a rule of decision requiring such member's dismissal, but because the fire department provides "a function so traditionally associated with sovereignty that its performance, even by an otherwise 'private' entity, constitutes state action." *Id.,* at 22. The court found that the "private" defendant did play such a role, and was subject to constitutional requirements despite the fact that the locality in which it was situated in no way compelled or caused defendant's dismissal decision. "The town has no ordinances, rules, or regulations relating to such membership practices as discipline and termination, nor has the town ever become involved with such practices." *Id.* "[I]t is not necessary that the town participate to find the dismissal a form of state action. It is enough that by virtue of its function and its relationship to the town, the MVFD is an agency of the state." *Id.,* at 23.

Therefore, because the Shriver Center and the Dever School entered into a contractual relationship in which Shriver agreed to perform functions imposed by the Fourteenth Amendment on Dever through the Commonwealth of Massachusetts, Shriver's actions were state actions for the purposes of the Fourteenth Amendment and actions "under color of law" for the purposes of 42 U.S.C. § 1983.

*Statute of Limitations*

This action was filed on December 19, 1980. Defendants Shriver Center, Haessler, and Pearl contend that the relevant statute of limitations is three years, M.G.L. c. 260, § 4, and that claims predicated on

acts which occurred prior to December 19, 1977, should be dismissed. Plaintiff acknowledges that the three year limitation period would apply to most of his claims but for the fact of his mental incapacity. Plaintiff argues that M.G.L. c. 260, § 7,[5] tolls the applicable statute of limitations for those with mental disabilities, and that therefore the three year limitation period is not effective in this case because he remains mentally disabled.

We hold that under the circumstances of this case, no cause of action should be dismissed on the grounds that the statute of limitations has expired. Plaintiff's complaint alleges sufficient facts to justify the conclusion that he was at all relevant times "insane" for the purposes of M.G.L. c. 260, § 7.[6] Most of plaintiff's factual allegations concern events occurring in 1976 or thereafter. This is not a case, therefore, in which the unspecified duration of M.G.L. c. 260, § 7's tolling period would have pernicious consequences for the administration of justice. Indeed, one Massachusetts court in interpreting the provision, ruled that a case brought by an "insane" plaintiff over seven years after the cause of action arose was not barred by the otherwise applicable two year provision. *Hornig v. Hornig*, 6 Mass. App. 109, 374 N.E.2d 289 (1978). Furthermore, the fact that a plaintiff's guardian might have brought the suit earlier does not alter the tolling effect of M.G.L. c. 260, § 7. *See Gaudette v. Wells*, 362 Mass. 60, 72, 284 N.E.2d 222 (1978), where failure of mother to bring wrongful death action on behalf of her children did not affect children's rights under M.G.L. c. 260, § 7.

Defendants' constructive motions to dismiss on this ground are denied.

### Other Grounds

Other grounds on which defendants rely to support their motions to dismiss are insubstantial at this stage of the proceedings. They are denied without prejudice, and may be raised later if appropriate after further factual development.

---

**5.** M.G.L. c. 260, § 7 provides that:

> If the person entitled thereto is a minor, or is insane or imprisoned when a right to bring an action first accrues, the action may be commenced within the time hereinbefore limited after the disability is removed.

**6.** "Insane" has been interpreted to encompass "any mental condition which precludes the plaintiff's understanding the nature or effects of his acts." *See Hornig v. Hornig*, 6 Mass. App. 109, 374 N.E.2d 289, 291 (1978).