Kim DAVENPORT

v.

SAINT MARY HOSPITAL, et al.

Civ. A. No. 84–4549.

United States District Court,
E.D. Pennsylvania.

April 28, 1986.

Kim Davenport, pro se.

Joan A. Johnson, Rawle & Henderson, Philadelphia, Pa., for John Yardumian.

Charles T. Roessing & Scott L. Sibert, White & Williams, Philadelphia, Pa., for Dr. Edward Hosten and Julie Patton.

Jeffrey B. Albert, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for St. Mary Hosp.

Susan M. McDermott, Asst. City Sol., for Badge 3905.

Herta R. Graham, for Richard Jaffe.

## OPINION

JOSEPH S. LORD, III, Senior District Judge.

Plaintiff seeks relief for the alleged deprivation of her civil rights arising out of her involuntary commitment to St. Mary Hospital and the Philadelphia Psychiatric Center from April 29, 1983 to June 22, 1983. Plaintiff filed her original *pro se* complaint on September 21, 1984. Several of the defendants named in that complaint filed motions to dismiss. Plaintiff responded to some of those motions, then requested, and was granted, thirty days to secure an attorney to file an amended complaint on her behalf. Plaintiff was, however, unable to secure counsel within the time granted, and on April 12, 1985, she filed an amended *pro se* complaint.

In her amended complaint, plaintiff states that her cause of action arises under article I, section 8, article IV, and the first, fourth, sixth, eighth and fourteenth amendments to the Constitution, and under federal statutes 42 U.S.C. §§ 1983, 1985(3) and 1986, 18 U.S.C. §§ 241 and 242, and 28 U.S.C. §§ 2201 and 2202. Plaintiff also alleges state law claims of assault and battery, medical malpractice, and intentional infliction of emotional distress, and requests that this court exercise pendent jurisdiction over these claims. Plaintiff names as defendants St. Mary Hospital (incorrectly designated as St. Mary's Hospital) and seven of the individuals who were involved in her involuntary commitment and hospitalization.

Motions to dismiss plaintiff's amended complaint have been filed by six of the defendants. I will consider each of them in turn. Before turning to these motions, however, I will explain briefly for plaintiff's benefit why several of the constitutional and statutory provisions under which plaintiff states that her cause of action arises are not discussed in any of defendants' motions to dismiss and will not be discussed further by this court. A private individual cannot by filing a civil complaint bring criminal charges under 18 U.S.C. §§ 241 and 242. Article I, section 8, article IV, and the first, sixth and eighth amendments do not confer causes of action, either directly, through the fourteenth amendment, or through 42 U.S.C. § 1983, for the harms that plaintiff alleges she suffered. *See Rennie v. Klein,* 653 F.2d 836, 843–44 (3d Cir.1981) (en banc) (discussing the constitutional basis for claims similar to those raised by plaintiff), *vacated on other grounds,* 458 U.S. 1119, 102 S.Ct. 3506, 73 L.Ed.2d 1381 (1982). Finally, no substantive rights upon which plaintiff may request relief are created by 28 U.S.C. §§ 2201 and 2202.

### A. *Officer Badge No. 3905's Motion to Dismiss*

Plaintiff has named as a defendant a Philadelphia police officer designated in her amended complaint as Officer Badge No. 3905. Plaintiff alleges that the sequence of events which ended in her involuntary commitment to two psychiatric hospitals began on April 29, 1983, when this officer forcibly took her into custody without a valid court order. The officer presently assigned badge No. 3905 has moved to dismiss plaintiff's claims against him. In support of his motion, defendant has submitted the affidavit of a personnel officer of the Philadelphia Police Department, who avers that no member of the Department was assigned badge No. 3905 on April 29, 1983.

In response, plaintiff concedes that she erroneously sued Officer Badge No. 3905, and has moved to dismiss her claims

against him without prejudice. She states that she should instead have initiated an action against the unknown officer who was driving van wagon No. 3905 at the time she was taken into custody.

Under Federal Rule of Civil Procedure 41(a)(1), a plaintiff may dismiss an action without leave of court at any time before service by the adverse party of an answer or a motion for summary judgment, whichever first occurs. Because defendant submitted an affidavit in support of his motion to dismiss, and because I conclude that this affidavit is properly considered at this time rather than excluded, I must treat defendant's motion as one for summary judgment. Fed.R.Civ.P. 12(b). Therefore, plaintiff may no longer, as of right, dismiss her claims against Officer Badge No. 3905 without prejudice. *See* Fed.R.Civ.P. 41(a)(1); 5 J. Moore, J. Lucas & J. Wicker, *Moore's Federal Practice* ¶ 41.02[3] (2d ed. 1985). Dismissal must be by court order upon such terms and conditions as the court deems proper. Fed.R.Civ.P. 41(a)(2).

As Officer Badge No. 3905 was improperly, albeit mistakenly, named as a defendant in this action, I deem it proper to dismiss plaintiff's claims against him with prejudice to her right to reinstitute suit against this officer. However, I do not deem it proper to preclude plaintiff from proceeding against the unknown officer who took her into custody. Therefore, plaintiff's claims against Officer Badge No. 3905 will be dismissed without prejudice to plaintiff's right to seek leave, under the procedures and requirements of Federal Rule of Civil Procedure 15, to join the officer who took her into custody in the present action, or to institute a new action against him.

Plaintiff has moved, pursuant to Federal Rule of Civil Procedure 45, for an order compelling the production of documentary evidence to allow her to identify the officer who was driving van wagon No. 3905 when she was taken into custody. I will deny plaintiff's motion. A motion for an order to compel discovery is appropriate only after an opposing party has failed to comply with a discovery request made pursuant to specific provisions of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 37(a). If plaintiff wishes to conduct discovery, she must follow the procedures set forth in Rules 26 through 37. If plaintiff wishes, in connection with her discovery efforts, to obtain subpoenas under Rule 45, she must follow the procedures set forth therein. *See* Fed.R.Civ.P. 45(a).

B. *Hospital Defendants' Motions to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted*

Motions to dismiss plaintiff's amended complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), have been filed by defendant St. Mary Hospital, defendants Hosten, Yardumian and Jaffe, each of whom is a physician associated with either St. Mary Hospital or the Philadelphia Psychiatric Center, and defendant Patton, a social worker at the Philadelphia Psychiatric Center (the "hospital defendants"). To the extent that the motions of two or more of these hospital defendants raise common issues, I will discuss them in combination rather than individually.

1. *Plaintiff's Claims under 42 U.S.C. § 1983*

All five of the hospital defendants have moved to dismiss plaintiff's claims under section 1983. 42 U.S.C. § 1983. Each argues, *inter alia*, that the hospital defendants are private actors and that plaintiff's allegations do not provide a factual basis upon which plaintiff might establish that these defendants acted under color of state law.

In order to recover under section 1983, plaintiff must establish that the conduct of the hospital defendants which allegedly deprived her of federal rights is "fairly attributable to the [s]tate." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). The determination of when the conduct of private parties is converted into state action is

"necessarily [a] fact-bound inquiry." *Id.* at 939, 102 S.Ct. at 2755. " 'Only by sifting facts and weighing circumstances can the nonobvious involvement of the [s]tate in private conduct be attributed its true significance.' " *Id.* (quoting *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961)).

In this muddled area of section 1983 law, it is often difficult to attribute the proper significance to facts and circumstances in determining whether private conduct may fairly be considered that of the state. The usual difficulties are compounded in this case, as plaintiff's rambling, *pro se* complaint is in many respects imprecise, vague and conclusory, making it a formidable task even to ascertain, let alone to sift and weigh, the pertinent facts and circumstances.

Fortunately, though, I need not decide at this time whether plaintiff will ultimately prevail on the state action issue. Rather, in considering the hospital defendants' motions to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted, the issue before me is a limited one: whether "it appears beyond doubt that ... plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236–37, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974). In evaluating the sufficiency of plaintiff's allegations, I must hold her *pro se* complaint "to [a] less stringent standard[ ] than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam). Moreover, while plaintiff may be expected to know, and to plead with specificity, the injuries she has suffered, I cannot expect her to proffer detailed evidence establishing the "nonobvious involvement" of the state in her involuntary commitment and treatment, as this is the type of evidence that may well be developed only through discovery. *See Frazier v. Southeastern Pennsylvania Transportation Authority*, 785 F.2d 65, 68 (3d Cir.1986).

Plaintiff's allegations against the hospital defendants are as follows. Plaintiff alleges that from April 29 to June 22, 1983, defendants engaged in a conspiracy aimed at depriving her of the due process and equal protection of the laws of the Commonwealth of Pennsylvania and the United States. Amended Complaint at 4. She further alleges that through specific acts of conspiracy, defendants violated her right to privacy, held her in false imprisonment without a showing of probable cause, deprived her of the right to secure counsel during this false imprisonment, subjected her to cruel and unusual punishment, and, by denying her the due process and equal protection of the laws, held her at St. Mary Hospital and the Philadelphia Psychiatric Center until June 22, 1983. *Id.* ¶ 8, at 11.

Somewhat more specifically, plaintiff alleges that defendant St. Mary Hospital and its agents intentionally and in bad faith isolated her, beat her, and, in violation of state law, injected her with psychotropic or antipsychotic drugs before she was examined by a physician to determine whether she was mentally disabled. *Id.* ¶ 6, at 7. Plaintiff alleges that this denied her the opportunity to have her emergency examination [under Pa.Stat.Ann. tit. 50, § 7302 (Purdon 1985), pursuant to which a person determined to be severely mentally disabled may be given immediate emergency treatment] conducted on the same basis as for other citizens. Amended Complaint ¶ 7, at 7.

As to defendants Hosten and Yardumian, physicians associated with St. Mary Hospital, plaintiff alleges, *inter alia*, that they knew or reasonably should have known that she was injected with unprescribed drugs before being examined by a physician, that they neglected to investigate the same before conducting their examinations of her, and that they covered up the fact that her rights had been violated. *Id.* ¶¶ 8–11, at 8. In addition, plaintiff alleges that these defendants failed to act in good faith and pursuant to the mandate of state law, in that they made false and superficial

examinations of her for the purpose of holding her in false imprisonment at St. Mary Hospital. *Id.* ¶ 13, at 8–9. Further, she alleges that these defendants threatened, intimidated and coerced her, for the purpose of preventing her from objecting to her false imprisonment and availing herself of the due process of law, *id.* ¶¶ 14–15, at 9, and that they caused her money and property to be taken from her home, thereby depriving her of the means to secure counsel. *Id.* ¶ 16, at 9.

Finally, as to defendant Jaffe, a physician associated with the Philadelphia Psychiatric Center, and defendant Patton, a social worker at that institution, plaintiff alleges, *inter alia,* that they forcibly restrained her from leaving St. Mary Hospital and had her recommitted to mental health custody at the Philadelphia Psychiatric Center. *Id.* ¶ 2, at 10. She alleges that these defendants accomplished the latter by affirming under penalty of perjury that she was mentally ill, despite the fact that they realized after superficially examining her that they did not have a sufficient diagnostic basis [to do so]. *Id.* ¶¶ 3–4, at 10. She alleges in addition that these defendants purposely suppressed the facts regarding her false imprisonment from the proper authorities by pretending to hold a hearing [regarding her continued commitment] which was lacking in due process and denied her the equal protection of the laws. *Id.* ¶¶ 5–6, at 10–11.

Based on these allegations, I cannot conclude that plaintiff will ultimately prevail on the state action issue. Neither, however, can I dismiss her complaint on this ground, as based on plaintiff's allegations, read in conjunction with the state law under which her involuntary commitment took place, I cannot conclude that she will be unable to prove any set of facts in support of her claim that the hospital defendants acted under color of state law.

For purposes of the state action analysis, I will discuss separately plaintiff's claims regarding her physical and medical treatment and her claims regarding the commitment process. As to her physical and medical treatment, the only claims which plaintiff has alleged with sufficient particularity are those against defendant St. Mary Hospital. Plaintiff's conclusory allegation that all of the hospital defendants subjected her to cruel and unusual punishment is not sufficiently specific to state a claim against the individual hospital defendants regarding her physical and medical care.

St. Mary's argument as to why its physical care and medical treatment of plaintiff should not be deemed state action is threefold. First, it cites my opinion in *Cardio-Medical Associates v. Crozer-Chester Medical Center,* 536 F.Supp. 1065, 1096 n. 43 (E.D.Pa.1982), wherein I concluded that "no court considering the issue has ever found sufficient facts and circumstances to justify a finding that a private hospital has acted under color of state law for the purposes of section 1983." Second, it argues that institutions providing mental health care are no different from general hospitals in this regard. Finally, it argues that, while the state is involved in the act of commitment, the provision of physical care and medical treatment does not constitute state action under the Supreme Court's "public function" test, *see, e.g., Terry v. Adams,* 345 U.S. 461, 469–70, 73 S.Ct. 809, 813–14, 97 L.Ed. 1152 (1953), because the provision of these services is not, as required under that test, "traditionally the exclusive prerogative of the [s]tate." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 353, 95 S.Ct. 449, 455, 42 L.Ed.2d 477 (1974).

St. Mary's arguments misapprehend the critical difference between the cases it cites and the circumstances of this case. It is correct insofar as it is arguing that state funding and regulation of a private entity do not, without more, convert the entity's conduct into state action. *See, e.g., Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982); *Rendell-Baker v. Kohn,* 457 U.S. 830, 840–43, 102 S.Ct. 2764, 2770–73, 73 L.Ed.2d 418 (1982). There must be, in addition, a sufficiently close nexus between the state and the challenged conduct of the private entity. *E.g.,*

*Blum,* 457 U.S. at 1004, 102 S.Ct. at 2785. As to many aspects of the functioning of hospitals and other private entities, courts have found that such a nexus does not exist. *See, e.g., Cardio-Medical,* 536 F.Supp. at 1091 (no nexus between the state and the hospital's denial of privileges to plaintiff cardiologists); *see also Rendell-Baker,* 457 U.S. at 841–42, 102 S.Ct. at 2771–72 (challenged employment decision not sufficiently related to state funding or regulation to make it state action); *cf. Hodge v. Paoli Memorial Hospital,* 576 F.2d 563, 563–64 (3d Cir.1978) (per curiam) (neither the hospital's receipt of governmental funding nor the state's licensing requirements for nonprofit hospitals converted the denial of staff privileges to plaintiff surgeon into state action).[1]

However, as St. Mary acknowledges, such a nexus may be found if the challenged conduct of the private entity involves functions that are traditionally the exclusive prerogative of the state. *See Blum,* 457 U.S. at 1005, 102 S.Ct. at 2786. In this case, the nexus may well be provided by the fact that plaintiff's hospitalization at St. Mary was not voluntary, but compelled by the state. Although I do not have a factual record before me on this issue, Supreme Court decisions suggest that it is exclusively the state's prerogative to confine an individual involuntarily to a mental hospital. *See Addington v. Texas,* 441 U.S. 418, 426–27, 99 S.Ct. 1804, 1809–10, 60 L.Ed.2d 323 (1979) (discussing state interests sufficient to justify involuntary civil commitment); *O'Connor v. Donaldson,* 422 U.S. 563, 575–76, 95 S.Ct. 2486, 2493–94, 45 L.Ed.2d 396 (1975) (discussing criteria for involuntary civil commitment). In addition, while St. Mary is correct in arguing that the provision of medical care is not traditionally dependent on state authority, *see Polk County v. Dodson,* 454 U.S. 312, 319, 102 S.Ct. 445, 450, 70 L.Ed.2d

509 (1981), more is involved when an individual is involuntarily confined for mental health reasons. In this context, the state takes on a custodial function, and those who perform this function owe a duty not only to the institutionalized patient but to the public. *See id.* at 320, 102 S.Ct. at 450–51 (distinguishing the state hospital administrator in *O'Connor* from the public defender in *Polk,* because public defenders have no such dual loyalty).

Moreover, once the state curtails an individual's liberty through the civil commitment process, it assumes affirmative obligations, imposed by the Constitution, for the individual's care and well-being. *See, e.g., Youngberg v. Romeo,* 457 U.S. 307, 315–19, 102 S.Ct. 2452, 2457–60, 73 L.Ed.2d 28 (1982) (discussing the state's duty to care for institutionalized individuals); *Rennie v. Klein,* 720 F.2d 266, 268–70 (3d Cir. 1983) (en banc) (discussing the right of involuntarily committed mentally ill patients to refuse antipsychotic drugs); *see also O'Connor,* 422 U.S. at 576, 95 S.Ct. at 2494 (holding that a state may not constitutionally confine a nondangerous individual who can survive safely in freedom). If the state chooses to delegate these responsibilities, and a private hospital chooses to assume them, neither can then argue that the private hospital's acts and omissions do not occur under the color of state law. *See Lombard v. Eunice Kennedy Shriver Center for Mental Retardation, Inc.,* 556 F.Supp. 677, 680 (D.Mass.1983). To hold otherwise would allow the state to avoid its constitutional obligations simply by delegating to private hospitals its responsibility for the care of individuals it involuntarily confines, *id.,* and would render meaningless the recently recognized rights of the involuntarily committed. There is ample precedent supporting a finding of state action in circumstances such as these. *See, e.g., id.* at 678–80 (private agency which

---

1. In the hospital setting, the primary state action argument advanced has been the symbiotic relationship theory, not the nexus theory. *See, e.g., Cardio-Medical,* 536 F.Supp. at 1091–97. Although plaintiff included the symbiotic relationship theory in her original complaint, she no longer argues that St. Mary Hospital should be deemed an arm of the state. Thus, the numerous cases rejecting the symbiotic relationship theory of state action in the hospital context, *see, e.g., id.,* shed little light on the state action inquiry in the present case.

contracted with a state residential institution to provide medical care that the state was constitutionally obligated to provide acted under color of state law); *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir.1985) (private health service which agreed to provide medical care in a county jail deemed a state actor); *Milonas v. Williams,* 691 F.2d 931, 939–40 (10th Cir.1982) (owners and operators of a private school in which students were involuntarily placed by the state acted under color of state law), *cert. denied,* 460 U.S. 1069, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983); *Medina v. O'Neill,* 589 F.Supp. 1028, 1038–39 (S.D.Tex.1984) (immigration and detention are both traditionally the exclusive prerogative of the state; thus, private companies' decisions regarding detention of stowaways deemed state action); *Kentucky Association for Retarded Citizens v. Conn,* 510 F.Supp. 1233, 1250 (W.D.Ky.1980) (private corporation which contracted to operate a facility for the mentally retarded, a duty largely within the province of the state, suable under section 1983), *aff'd on other grounds,* 674 F.2d 582 (6th Cir.), *cert. denied,* 459 U.S. 1041, 103 S.Ct. 457, 74 L.Ed.2d 609 (1982); *Ruffler v. Phelps Memorial Hospital,* 453 F.Supp. 1062, 1067–71 (S.D.N.Y.1978) (state expressly depended on use of private facilities to effectuate its policy of providing mental health treatment; therefore, private hospital's conduct deemed state action under the public function test).

Plaintiff has not pleaded facts as to the relationship between St. Mary Hospital and the Commonwealth of Pennsylvania regarding the confinement and treatment of individuals deemed mentally disabled. However, it may fairly be inferred from plaintiff's allegation that she was taken to St. Mary by a Philadelphia police officer that some such arrangement existed. Because plaintiff may well be able to prove that Pennsylvania delegated to St. Mary its responsibility for her care and custody, and that St. Mary agreed to assume the same, I conclude that her claims against St. Mary should not be dismissed for failure to establish state action.

Plaintiff's claims against the individual hospital defendants relate not to her physical care and medical treatment, but to their alleged misuse of Pennsylvania's civil commitment process. In the claims which she has pleaded with sufficient particularity, plaintiff alleges, in essence, that each of the individual hospital defendants falsely stated that she was mentally ill, knowing that she was not, for the purpose of holding her in false imprisonment at St. Mary Hospital and the Philadelphia Psychiatric Center.

Defendants Hosten, Jaffe and Patton argue that their conduct cannot fairly be attributed to the state under *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). In *Lugar,* the Supreme Court held, *inter alia,* that insofar as the plaintiff was alleging that the private party defendants had misused a prejudgment attachment statute, he had not stated a cause of action under section 1983. *Id.* at 940, 102 S.Ct. at 2755. The Court reasoned that because the private parties' conduct was unlawful under state law, it could not be ascribed to any governmental decision, and therefore concluded that their conduct did not occur under color of state law. *Id.* Defendants argue that, because plaintiff is attacking only their noncompliance with or misuse of Pennsylvania's civil commitment statute, she has failed to allege state action under *Lugar.*[2]

**2.** Apparently in response to this argument, plaintiff in her amended complaint challenged the constitutionality of sections 4405(a)(1), Pa. Stat.Ann. tit. 50, § 4405(a)(1) (Purdon 1969), and 7302(a)(2), Pa.Stat.Ann. tit. 50, § 7302(a)(2) (Purdon 1985), of Pennsylvania's civil commitment statute. Insofar as plaintiff may have been attempting to obviate the hospital defendants' *Lugar* argument, this challenge is unavailing. Section 4405(a)(1) has been repealed except insofar as it relates to persons who are mentally retarded, *see* Pa.Stat.Ann. tit. 50, § 7502 (Purdon 1985), and was not in effect as to individuals deemed mentally ill at the time of plaintiff's civil commitment. Section 7302(a)(2) allows certain authorized individuals to take a person to an approved facility without a warrant for an emergency examination. The only defendant who allegedly acted under this provision is Officer Badge No. 3905, who pursuant to

Defendants' mechanical application of the *Lugar* Court's analysis to the present case obscures what the Third Circuit has recognized as the critical issue in *Lugar:* "whether the state, through its agents or laws, has established a formal procedure or working relationship that drapes private actors with the power of the state." *Cruz v. Donnelly,* 727 F.2d 79, 82 (3d Cir.1984) (per curiam). One way in which the state may do this is by delegating to private individuals authority in an area that has traditionally been deemed its exclusive prerogative. *See, e.g., Henderson v. Fisher,* 631 F.2d 1115, 1118–19 (3d Cir.1980) (per curiam). This issue was not before the *Lugar* Court, as the Court had previously, in the context of commercial self-help statutes, rejected the applicability of its public function test for state action, finding it particularly inappropriate to expand this test into the area of private commercial relations. *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 163, 98 S.Ct. 1729, 1737, 56 L.Ed.2d 185 (1978). In so doing, the Court emphasized that a state's commercial self-help statutes are but one among a number of alternatives available for the resolution of "purely private dispute[s]." *Id.* at 160, 98 S.Ct. at 1735.

Civil commitment statutes are, however, of an entirely different nature from the commercial self-help statutes at issue in *Lugar* and *Flagg Brothers.* It is obvious that civil commitment statutes do not exist to resolve purely private disputes. Indeed, it would undoubtedly be unconstitutional for a state to use civil commitment for such a purpose. *See O'Connor,* 422 U.S. at 575–76, 95 S.Ct. at 2493–94. Moreover, in contrast to commercial self-help statutes, the involuntary confinement of an individual through the civil commitment process appears to be exclusively the prerogative of the state. *See supra* p. 1234. Therefore, the public function test may well be applicable to the context of involuntary civil commitment.

In arguing that plaintiff cannot establish state action, defendants rely on the princi-

ple, set forth in commercial self-help and other cases in which the Court has rejected the applicability of the public function test, that the state cannot be held responsible for purely private decisions which it permits but does not compel. *See, e.g., Blum,* 457 U.S. at 1004–05, 102 S.Ct. at 2785–86; *Flagg Brothers,* 436 U.S. at 164–66, 98 S.Ct. at 1737–39; *see also Chicarelli v. Plymouth Garden Apartments,* 551 F.Supp. 532, 538–39 (E.D.Pa.1982). However, under the public function test, the pertinent inquiry is not whether the state compelled the challenged conduct. Once the state has chosen to delegate to private individuals its authority in an area that is deemed its exclusive prerogative, this delegation provides the basis for holding the state responsible for the private individuals' conduct. *See, e.g., Lombard,* 556 F.Supp. at 680. Concomitantly, abuse of this delegated authority may fairly be attributed to the state, as once the state has put its weight behind an individual's private decision, the individual's abuse of authority occurs under color of state law. *Cf. Lugar,* 457 U.S. at 940, 102 S.Ct. at 2755 (state official's abuse of authority may be deemed to occur under color of state law under *Monroe v. Pape,* 365 U.S. 167, 183–87, 81 S.Ct. 473, 481–84, 5 L.Ed.2d 492 (1961)).

■ Having examined the statute under which plaintiff was involuntarily committed, I conclude that she may be able to establish facts showing that such a delegation of authority occurred. The statute provides, *inter alia,* that: (i) when a person is taken to a treatment facility for an emergency examination, the person may be held for up to 120 hours for involuntary emergency treatment, based upon a physician's determination that the individual is severely mentally disabled and in need of emergency treatment, *see* Pa.Stat.Ann. tit. 50, § 7302(b), (d) (Purdon 1985); (ii) the facility may apply to the court of common pleas for the individual's extended involuntary emergency treatment for a period not to exceed twenty days, *see id.* § 7303; and

this opinion, *see supra* p. 1231, will no longer be

a party to this action.

(iii) the director of the facility may apply to the court for a further extension of the individual's involuntary treatment for a period not to exceed ninety days. *See id.* § 7304. Although it is not clear from the allegations in plaintiff's complaint, it appears from the copies of her commitment papers submitted to this court that the individual hospital defendants acted pursuant to these provisions.[3] Thus, the hospital defendants apparently had the authority under state law to confine plaintiff involuntarily for 120 hours and, while continuing to hold her in custody, to initiate proceedings against her for the purpose of continuing her involuntary confinement.

In contrast to the lack of state involvement in a private individual's decision to utilize state law to resolve a private dispute, *see, e.g., Lugar,* 457 U.S. at 940, 102 S.Ct. at 2755; *see also Dahl v. Akin,* 630 F.2d 277, 281–82 (5th Cir.1980) (daughter's allegedly wrongful initiation of involuntary commitment proceedings against her father was not under color of state law, as daughter possessed no particular authority under state law beyond the first amendment right of petition), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1977, 68 L.Ed.2d 296 (1981), Pennsylvania's delegation of authority to the hospital defendants, if established, potentially implicates the state in their decisions. Courts have held that when the state gives a select individual or group powers that are traditionally exercised by the state and not possessed by the general citizenry, a person exercising these powers is "clothed with the authority of state law," *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941), and may therefore be deemed a state actor. *See, e.g., Jennings v. Shuman,* 567 F.2d 1213, 1220 (3d Cir.1977) (holding that a private citizen who was appointed an assistant special prosecutor fell within the *Classic* standard); *Kay v. Benson,* 472 F.Supp. 850, 851 (D.N.H.1979) (finding that New Hampshire's civil commitment statute gave the defendant physician the power of detention, a power historically reserved to the state, thereby clothing him with state authority); *Hill v. Toll,* 320 F.Supp. 185, 186–87 (E.D.Pa.1970) (holding that because a state statute accorded bail bondsmen the privilege to arrest, a privilege not given to the general public, the state had placed its imprimatur on their conduct).

Defendant Yardumian argues that, based on *Blum,* 457 U.S. at 1008–09, 102 S.Ct. at 2787–88, the hospital defendants' decisions must necessarily be deemed private, and therefore not made under color of state law, because these decisions involved the defendants' medical judgments. However, the Supreme Court has rejected the argument that decisions made in the involuntary civil commitment context involve solely private medical judgments, as institutional physicians performing the state's custodial function "assume an obligation to the mission that the [s]tate, through the institution, attempts to achieve." *Polk County,* 454 U.S. at 320, 102 S.Ct. at 451; *see also supra* p. 1234 (discussing *Polk County*).

I reach no decision at this time as to whether the authority apparently delegated to the hospital defendants will, in fact, be sufficient to establish that any or all of them acted under color of state law. I hold only that, because the issue is at least close in this case, plaintiff's complaint should not be dismissed for failure adequately to allege state action. *See Robb v. City of Philadelphia,* 733 F.2d 286, 292 (3d Cir. 1984).[4]

---

**3.** It appears that defendant Hosten examined plaintiff and held her for emergency treatment pursuant to section 7302(b); that defendant Yardumian petitioned for plaintiff's involuntary commitment under section 7303; and that defendant Patton (apparently as the authorized representative of the director of the Philadelphia Psychiatric Center) petitioned for plaintiff's continued involuntary commitment under section 7304, with defendant Jaffe stating in the petition that plaintiff was severely mentally disabled and in need of continued treatment.

**4.** Because it is unnecessary to do so in light of this holding, I express no opinion on defendants' argument that plaintiff's allegations are insufficient to establish that defendants conspired with state officials, which, if shown, could give rise to section 1983 liability under *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150–

In addition to their state action argument, defendants Hosten and Patton argue that plaintiff's complaint must be dismissed because plaintiff cannot show that she was deprived of any right, privilege or immunity secured by the Constitution or the laws of the United States. *See, e.g., Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981). Defendants assert that plaintiff was afforded the due process required under Pennsylvania's civil commitment statute, and that this process not only meets but exceeds the minimum due process protection required by the Supreme Court in *Parham v. J.R.,* 442 U.S. 584, 606–16, 99 S.Ct. 2493, 2506–11, 61 L.Ed.2d 101 (1979) (due process requirements for admitting a child to a state mental hospital).

■ As I read plaintiff's complaint, her claim is not that the provisions of Pennsylvania's civil commitment statute under which the hospital defendants acted fail to comport with constitutional due process requirements, but that her due process rights were violated because these defendants abused the authority given to them under this statute for the purpose of holding her in false imprisonment. Defendants' argument that the Pennsylvania statute provides adequate due process does not obviate this claim. Therefore, I will deny defendants' motions to dismiss plaintiff's complaint for failure to allege a deprivation of her constitutional rights.

■ Defendant Yardumian has raised three issues in addition to his state action argument. First, he argues that, to the extent that plaintiff's allegations might be construed to state a cause of action against him for the invasion of her privacy, plaintiff's claim is barred by the applicable statute of limitations. Because I do not understand plaintiff's complaint to state a claim against defendant Yardumian for invasion of privacy, I decline to address this argument. Second, defendant argues that he is immune from suit under section 1983 because he acted in good faith. Defendant cannot, however, establish that he acted in good faith merely by asserting the same in a memorandum of law. Therefore, I will deny his motion insofar as he seeks to have plaintiff's section 1983 claims dismissed on this basis. Finally, defendant contends that plaintiff has asserted a cause of action directly under the fourteenth amendment, and argues that such a cause of action should not be recognized by this court. However, whether plaintiff has attempted to state a direct cause of action under the fourteenth amendment is of no moment, as such an action would be completely subsumed by her section 1983 claims. *See Rogin v. Bensalem Township,* 616 F.2d 680, 686–87 (3d Cir.1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). Therefore, I have no reason to decide whether to recognize a direct cause of action under the Constitution for the injuries plaintiff alleges she has suffered. *Id.*

### 2. *Plaintiff's Claims under 42 U.S.C. § 1985(3)*

■ Plaintiff's claims under section 1985(3), 42 U.S.C. § 1985(3), are based on her allegation that defendants engaged in a conspiracy to deprive her of the due process of law and of the equal protection of the laws during the course of her involuntary commitment and hospitalization. Each of the hospital defendants argues that plaintiff has failed to state a claim under section 1985(3). I agree.

I find dispositive plaintiff's failure to allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Plaintiff vehemently asserts that defendants invidiously discriminated against her, and that such invidious discrimination is actionable under section 1985(3). However, the Supreme Court has made it clear that

52, 90 S.Ct. 1598, 1604–06, 26 L.Ed.2d 142 (1970). *See also Tower v. Glover,* 467 U.S. 914,

104 S.Ct. 2820, 2824–25, 81 L.Ed.2d 758 (1984).

section 1985(3) reaches only conspiracies motivated by certain types of class-based bias. *United Brotherhood of Carpenters and Joiners of America, Local 610 v. Scott*, 463 U.S. 825, 834–39, 103 S.Ct. 3352, 3358–61, 77 L.Ed.2d 1049 (1983).

Plaintiff's complaint contains no averments which suggest that class-based bias motivated the alleged conspiracy against her. Therefore, unless plaintiff amends her complaint to allege specific facts to correct this deficiency, *see infra* pp. 1240–1241, her claims under section 1985(3) will be dismissed.

### 3. *Plaintiff's Claims under 42 U.S.C. § 1986*

Defendants Hosten, Yardumian, Jaffe and Patton have moved to dismiss plaintiff's claims under section 1986. 42 U.S.C. § 1986. These defendants argue, correctly, that plaintiff's failure to state a claim under section 1985 precludes her from proceeding under section 1986, as a violation of section 1986 must be predicated upon a violation of section 1985. *See, e.g., Rogin*, 616 F.2d at 696. Moreover, plaintiff's claims under section 1986 are barred by that statute's one year limitations period. *See* 42 U.S.C. § 1986. For these reasons, defendants' motions to dismiss plaintiff's section 1986 claims will be granted.

### 4. *Plaintiff's Claims under 42 U.S.C. § 9501*

█ In her original complaint, plaintiff alleged that defendants violated certain rights guaranteed her under section 9501. 42 U.S.C. § 9501. Defendants Hosten, Yardumian, Jaffe and Patton have moved to dismiss plaintiff's section 9501 claims, arguing that section 9501 does not create any substantive rights enforceable in a private lawsuit. I decline to address this issue, as plaintiff did not allege in her amended complaint that defendants had violated section 9501. Plaintiff's amended complaint supersedes her original one, *see* 3 J. Moore, *Moore's Federal Practice* ¶ 15.08[7] (2d ed. 1985), and therefore her section 9501 claims are no longer before this court.

### 5. *Plaintiff's Pendent State Law Claims*

In her amended complaint, plaintiff alleges state law claims of assault and battery, medical malpractice, and intentional infliction of emotional distress, and requests that this court exercise pendent jurisdiction over these claims. Defendants Hosten, Yardumian, Jaffe and Patton have moved to dismiss plaintiff's pendent claims, arguing that, because there is no independent basis for federal jurisdiction, this court should not retain jurisdiction over plaintiff's state law claims.

█ For the reasons heretofore explained in this opinion, I reject defendants' argument that there is no independent basis for federal jurisdiction. However, as defendant Yardumian points out, plaintiff has completely failed to plead specific facts regarding the liability of any particular defendant for the state law violations she alleges. Unless plaintiff pleads specific facts against specific defendants regarding her state law claims, I cannot determine whether the exercise of pendent jurisdiction is proper. Therefore, plaintiff's state law claims will be dismissed unless she amends her complaint to correct this deficiency.

### C. *Defendant St. Mary Hospital's Motion to Compel Plaintiff to File a Second Amended Complaint*

Defendant St. Mary has moved to compel plaintiff to file a second amended complaint. In support of its motion, defendant argues that it is not clear from plaintiff's amended complaint whether St. Mary Hospital was a party to the conspiracies plaintiff alleges. Further, defendant asserts that plaintiff has not made clear the nature of St. Mary's participation in these alleged conspiracies or the conduct in which St. Mary allegedly engaged.

I find it difficult to ascertain the basis of St. Mary's arguments. Plaintiff has made specific allegations regarding the conduct of St. Mary Hospital and its agents. *See* Amended Complaint ¶¶ 6–7, at 7. While St.

Mary may be arguing that it cannot be held liable under section 1983 for the acts of its agents, it does not specifically so state. Given the thorny issues of section 1983 law that such an argument would raise,[5] I decline to address this issue unless it is squarely placed before me. St. Mary may also be arguing that plaintiff insinuates but does not specifically allege involvement on St. Mary's part beyond the allegations in paragraphs 6 and 7 of her amended complaint. This does not, however, preclude plaintiff from proceeding on the claims that she has adequately stated.

For these reasons, I will deny St. Mary's motion to compel plaintiff to file a second amended complaint. However, if plaintiff wishes to proceed against St. Mary on grounds other than those stated in paragraphs 6 and 7 of her amended complaint, she should file a second amended complaint, alleging specifically what further conduct of defendant St. Mary she believes violated her rights.

### D. Defendant Yardumian's Motion to Dismiss for Insufficiency of Service of Process

■ Defendant Yardumian has moved to dismiss plaintiff's complaint for insufficiency of service of process. In support of his motion, defendant states in his memorandum of law that: (i) plaintiff attempted to serve her complaint upon him by first class mail pursuant to Federal Rule of Civil Procedure 4(c)(2)(C)(ii); (ii) service was not perfected by this method because plaintiff never received the required acknowledgement of service from him; and (iii) plaintiff did not attempt to make service by any other method permitted by Rule 4. Fed.R. Civ.P. 4. In response, plaintiff makes the conclusory argument that defendant is not entitled to have this court grant his motion to dismiss for insufficiency of service of process.

As may be apparent from the foregoing, neither party has submitted a shred of competent evidence on this issue. The only thing I can ascertain from the record is that plaintiff has not filed proof of service with the court. This failure does not, however, affect the validity of service of process. Fed.R.Civ.P. 4(g). To resolve this issue, plaintiff should establish on the record, by affidavit or other competent evidence, how service was made on this defendant. Defendant may, if he wishes, submit competent evidence in response. Once I have a factual record before me, I will determine whether effective service was made. If I find that service of process on defendant was insufficient, then I will decide whether to grant defendant's motion to dismiss plaintiff's claims against him on this basis, or whether I should instead quash the defective service and retain the action, *see* 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 12.07[2.–4] (2d ed. 1985), an issue which has not been addressed by the parties.

### E. Conclusion

■ In this circuit, an individual who has filed a civil rights complaint dismissible for lack of factual specificity must be given a reasonable opportunity to cure the pleading defects, if possible, by amendment of the complaint. *E.g., Darr v. Wolfe,* 767 F.2d 79, 81 (3d Cir.1985). Therefore, plaintiff will be given thirty days to file a second amended complaint in order to cure the deficiencies identified in the foregoing opinion. In addition, if plaintiff wishes to proceed against any defendant on a claim other than those that I have found to be stated with sufficient particularity, she should at this time amend her complaint to allege specifically the particular conduct of the defendant that she believes violated her rights. Any amendments made by plaintiff must be in accordance with Federal Rule of Civil Procedure 11, which provides that

5. For a discussion of the applicability of the *respondeat superior* doctrine to suits under section 1983 against entities other than municipalities, see *Hill,* 320 F.Supp. at 188–89; *Carter v. Carlson,* 447 F.2d 358, 370 n. 39 (D.C.Cir.1971) (discussing *Hill* with approval), *rev'd on other grounds sub nom. District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973).

pleadings must be, to the best of a party's knowledge, "well grounded in fact and ... warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law."

An appropriate order will be entered.