FIALKOWSKI, Leona, as mother and Administratrix of the Estate of Walter Fialkowski, and Fialkowski, Marion, as father of Walter Fialkowski

v.

**GREENWICH HOME FOR CHILDREN, INC., et al.**

**Civ. A. No. 86–6598.**

United States District Court, E.D. Pennsylvania.

Dec. 30, 1987.

Alan M. Sandals, Berger & Montague, P.C., Philadelphia, Pa., for plaintiffs.

Andrew M. Duchovany, Douglas H. Riblet, Philadelphia, Pa., for Northeast Community Center.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

This action arises from the choking death suffered by Walter Fialkowski, a thirty-three year old profoundly retarded man, while a resident of a community living arrangement operated by defendant Greenwich Home for Children, Inc. (Greenwich Home).[1] Plaintiffs Leona and Marion Failkowski, parents of the decedent, and Leona Fialkowski in her capacity as administratrix of his estate, bring this suit under the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging that defendants' actions with respect to Walter Fialkowski's death deprived him of his constitutional rights under the fourteenth amendment. Plaintiffs have also brought a pendent state claim for negligence and gross negligence under Pennsylvania law.

Defendant Northeast Community Center for Mental Health/Mental Retardation, Inc. (Northeast Center) has moved to dismiss plaintiffs' complaint for failure to state a cause of action under § 1983, and to dismiss the pendent state claim for lack of federal jurisdiction. Plaintiffs allege in their complaint that Northeast Center, as a "base service unit" within the Commonwealth of Pennsylvania's mental health care scheme, is responsible for arranging, monitoring, and coordinating the provision of residential services for retarded persons in Northeast Philadelphia. Northeast Center, according to plaintiffs, arranged for Greenwich Home to provide residential services to Walter Fialkowski.

In its motion to dismiss, defendant Northeast Center contends that the essential elements of a § 1983 claim are absent from plaintiffs' complaint. These elements are (1) the existence of state action and (2) the deprivation of a constitutionally protected right, privilege or immunity. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981).

Northeast Center disputes whether the facts alleged by plaintiffs regarding the acts and omissions of the defendants in their provision of residential services and care to Walter Fialkowski constitute state action. However, neither case law nor procedural rules require plaintiffs to establish that the defendants' actions were committed under color of state law in order to state a cause of action. Indeed, under the pleading standard of *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), this court need only decide that there exists some set of facts, which if proven, could demonstrate a state violation of the United States Constitution. *Board of Education of East Windsor Regional School District v. Diamond*, 808 F.2d 987, 996 (3d Cir. 1986); *Davenport v. Saint Mary Hospital*, 633 F.Supp. 1228, 1232 (E.D.Pa.1986).

Private entities whose involvement with state and local governments makes them state actors under the fourteenth amendment act under color of state law and are therefore subject to liability under § 1983. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).

---

1. The decedent allegedly died while eating a peanut butter sandwich served to him by his primary caretaker in the Greenwich Home, Ms. Marva Lucas, who is also a defendant in this action.

   According to the complaint the decedent, in addition to being severely retarded, suffered from cerebral palsy and physical disabilities. Plaintiffs maintain that intense monitoring of meals was necessary as a consequence of decedent's inactive gag reflex, abnormal swallowing and chewing of food, and tendency to gorge himself.

Critical to the determination of whether the defendants can be considered state actors is the state's duty to provide services to its mentally retarded citizens. Plaintiffs allege that under applicable statutes, the Commonwealth of Pennsylvania has assumed a duty to provide custody, care, and habilitation services, including residential services, to its mentally retarded citizens. Plaintiffs further allege that in providing residential services to Walter Fialkowski, the defendants acted pursuant to direct or delegated state authority. This is sufficient to state a cause of action under *Conley*, since if proved, these facts would constitute state action under the "public function" test articulated in *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352–53, 95 S.Ct. 449, 454–55, 42 L.Ed.2d 477 (1974).

In *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Supreme Court held that when a state takes on the responsibility to care for its retarded citizens by institutionalizing them, it assumes an affirmative duty, imposed by the due process clause of the fourteenth amendment, for the individuals' care and well-being. This includes the duty to provide reasonable care and safe surroundings and conditions.

■ Where the state chooses to delegate these responsibilities, and an institution or other private entity chooses to assume them, neither the state nor the private entity may assert that the entity's acts and omissions do not occur under color of state law. *Davenport*, 633 F.Supp. at 1234. *See also, Lombard v. Eunice Kennedy Shriver Center for Mental Retardation, Inc.*, 556 F.Supp. 677, 680 (D.Mass.1983). As stated in *Davenport*, "to hold otherwise would allow the state to avoid its constitutional obligations simply by delegating to private hospitals its responsibility for the care of individuals it involuntarily confines, and would render meaningless the recently recognized rights of the involuntarily committed." 633 F.Supp. at 1234 (citation omitted).

■ Defendant argues that *Youngberg, Davenport,* and *Lombard* are factually distinguishable from the present case because Walter Fialkowski was not committed, but rather voluntarily availed himself of the services provided to him by the defendants. This distinction has no practical significance in terms of constitutional rights. Under existing case law, the rights of mentally retarded individuals in the care of the state does not turn on the voluntary or involuntary nature of their submission to the state's care. *See e.g., Society for Good Will to Retarded Children, Inc. v. Cuomo*, 737 F.2d 1239, 1246 (2d Cir.1984) (residents of state-operated school for the mentally retarded are entitled to safe conditions and freedom from undue bodily restraint regardless of the voluntary or involuntary nature of their residency); *Association for Retarded Citizens of North Dakota v. Olson*, 561 F.Supp. 473, 484–85 (D.N.D.1982) ("An individual's liberty is not less worthy of protection merely because he has consented to be placed in a situation of confinement.") and cases cited therein, *aff'd in part*, 713 F.2d 1384, 1393 (8th Cir.1983). Indeed, the voluntariness distinction is incompatible with the clear dependence of mentally retarded individuals such as the now deceased Mr. Fialkowski on the care and supervision provided by others.

The second element of a § 1983 claim is that the conduct deprived an individual of his or her federal constitutional rights. In the present case, plaintiffs allege that the defendants deprived Walter Fialkowski of his constitutional rights to safety and life under the fourteenth amendment through negligence and gross negligence.

Defendant concedes that a mentally retarded individual involuntarily committed to a state institution has liberty interests under the due process clause of the Fourteenth Amendment of the United States Constitution. As discussed above, an individual voluntarily in the care of the state has the same constitutional rights under the due process clause as one who is involuntarily in that position.

Defendant correctly cites the Supreme Court decision in *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) for the proposition that the due

process clause is not implicated by a state actor's *negligent* conduct which causes unintended loss of or injury to life, liberty, or property. In *Daniels,* the Court rejected a state prisoner's efforts to recover under § 1983 for injuries allegedly sustained when he slipped on a pillow left on the stairs by a prison official. In the Court's view, the actions of the prison official did not rise to a level which would implicate due process concerns. Instead, the conduct challenged amounted to no more than the ordinary tort of negligence. The Court reiterated this view in its subsequent decision *Davidson v. Cannon,* 474 U.S. 344, 347–48, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986), stating that "lack of care simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent." Consequently, "where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required." *Id.* at 347, 106 S.Ct. at 670.

Arguably, the factual allegations of the complaint state only a lack of due care and is more accurately characterized as negligence than gross negligence. However, at this point in the proceedings, looking only at the complaint, I accept plaintiffs' characterization of the conduct as gross negligence notwithstanding my observation that the facts pleaded might suggest otherwise. That issue, however, shall be left for resolution at a later point in these proceedings on a full record. The *Daniels* decision relied on by defendant Northeast Center does not mandate dismissal at this stage.

■ Since plaintiffs have stated a cause of action under federal law, their pendent state law claim will not be dismissed. The pendent jurisdiction doctrine allows adjudication of claims in federal courts which would not otherwise be within the courts' jurisdiction if those claims arise from a common nucleus of operative facts as claims within the courts' jurisdiction. There is no indication in the present case that the facts underlying both the federal and state claims arose from different facts.

An appropriate order follows.

## ORDER

AND NOW, this 30th day of December, 1987, upon consideration of Northeast Center's motion to dismiss and the response thereto, and for the reasons stated in the accompanying memorandum, IT IS ORDERED that defendant's motion is DENIED.