John DOE and Mary Doe, Individually and as Next Friends of the Minor, Chris Doe, and all others similarly situated, Plaintiffs,

v.

Paul Dee HUMAN, Superintendent of Gravette Public School District, A.P. Vohs, Principal of Gravette Elementary School, Dale Bequette, President of the Gravette School Board, and John Garrett, Rex Elder, Jerry Easley, Charles L. Casey, Billy V. Hall, and Bill Meade, Members of the Gravette School Board,

Jim Lingle and George Oleson, Rogers, Ark., for plaintiffs.

John Eidsmoe, Broken Arrow, Okl., for defendants.

## AMENDED MEMORANDUM OPINION

MORRIS SHEPPARD ARNOLD, District Judge.

For longer than anyone can reliably remember, perhaps for as long as fifty-one years, the Gravette, Arkansas public schools have provided an opportunity for its elementary school children to learn about the Bible. Bible classes are taught during regular school hours and in the school building, by volunteers who are not acting on behalf of any church and are not employees of the school. No course credit is given for these classes and attendance is voluntary. Parents who do not wish their children to attend can arrange for them to spend the time given over to Bible classes in the library, in tutoring sessions, or in other, unspecified, instructional situations. Ninety-six percent of the children attend the Bible classes.

The parents of one of the affected children filed this suit under 42 U.S.C. § 1983, asking for injunctive and declaratory relief, asserting that the practice described above violates the First and Fourteenth Amendments of the Constitution of the United States because it amounts to an establishment of religion. The case came on for hearing on plaintiffs' prayer for a preliminary injunction.

I.

In order to prevail on their petition, plaintiffs recognize that they must show, among other things, that they have some substantial likelihood of success on the merits. On the question of the merits, plaintiffs insist that the practice in issue comes squarely within the rule announced in the case of *McCollum v. Board of Education*, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 (1948). Mr. Justice Black wrote that the instruction program in *McCollum* was "beyond all question a utilization of the tax-established and tax-supported public school system to aid religious groups to spread their faith. And it falls squarely under the ban of the First Amendment...." *Id.* at 210, 68 S.Ct. at 464. In the same case, the Court alluded with approval to the statement in *Everson v. Board of Education*, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947) that "[n]either a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another." *Id.* at 15, 67 S.Ct. at 511.

Defendants do not argue that the principles laid down in these cases have been abandoned by the Supreme Court of the United States or are likely to be abandoned. They argue, instead, that the instruction is not religious and that it is not sectarian. The court will address these arguments in turn.

First, as to the nature of the instruction, Mr. Paul Dee Human, Superintendent of the Gravette Schools, testified that, though he had not attended any of the relevant sessions, their aim was to provide the children an opportunity to "read the Bible or have the Bible read." He also stated that such Bible readings were intended "to help [the children] determine their value system and help them become better persons." He further said that "the Bible is the foundation of Western Culture" and that therefore a study of it "allows young children to make judgments on developing their moral values and character." No doubt developing moral values and character is a laudable purpose and, in any case, one which a

school system ought always to promote. The question of motive is one to which the court will return.

Mrs. Elsie Smith, one of two persons who presently teach the classes, testified that there was no attempt made in them to proselytize or ask the children to become Christians. She said that she simply tells the stories without embellishment or omission, because, in her words, "it's important that it [the class] be true to Scripture because I believe that the Bible is the infallible word of God." She also taught the children that the Bible is the word of God, and that the creation story in Genesis, indeed the whole Bible, was literally true. The children also sang songs, one of which is "Jesus is God's Son"; another is entitled "Four Letter Words" which asserts that Jesus came from heaven, was crucified, and receives believers into his fold. It is plain that the children are not singing these songs and others for their musical, literary, or poetic value: The songs are manifestly didactic, intended to inculcate their content into those who are singing them.

It is, of course, not the court's province to decide whether Mrs. Smith's beliefs and teachings are true. However that may be, they are plainly religious: They deal with God, salvation, and divinely-inspired scripture. Mrs. Smith asserted confidently on the witness stand that the sentiments she expressed in her classes were "statements of fact not statements of religion." As a matter of law, however, it would be difficult, indeed impossible, not to categorize the instructional program undertaken here as a religious one.

Defendants' second argument, that the instruction was not sectarian, is not of obvious relevance: It is not clear that it would matter whether the teaching, if religious, was sectarian or not. In fact, if atheism counts as a religion under the Constitution, then it is not easy to see how any theistic teaching could fail to be sectarian. It needs to be borne in mind, moreover, that Establishment Clause cases are distinct from Equal Protection cases. If, for instance, everyone in a given jurisdiction belonged to one sect, practices of the government deliberately promoting the aims of that sect would nevertheless amount to an establishment, even though

everyone was being treated equally. There would simply be no one inclined to bring a lawsuit to enjoin the practices, unless it were someone altruistically devoted to the protection of constitutional principle. Nevertheless, since *McCollum* made something of the fact that sectarianism was an important indicium of unconstitutionality, the court will address this issue. It can, in fact, be shortly dealt with. For one thing, there are a number of Christian denominations that would question Mrs. Smith's claim of literal truth for the Bible. For another, there are other religions, notably the Jewish and Muslim faiths, which would hardly accept the proposition that Jesus is God's son. The court reemphasizes that it is not engaged in the enterprise of deciding what religion or denomination is correct. It merely holds that the instruction in the Gravette school system is sectarian.

## II.

It would hardly seem, then, that a plainer case of establishment under the *McCollum* rule could come before the court. But since a case of more recent vintage, *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), contains a more refined set of potentially applicable principles, its relevance will be discussed. In *Lemon*, it was decided that in order for a governmental unit successfully to avoid a claim that it is establishing religion, it must appear that the challenged government activity has a secular purpose, neither advances nor inhibits religion, and does not foster an excessive entanglement with religion.

In this case, in addition to Mr. Human's testimony as to the school system's motive summarized above, the court had the advantage of hearing from two other witnesses whose statements bear on the issues of motive and effect. Mrs. Smith stated that she chose stories for their "moral and ethical values, to make the children better citizens." Ms. Gayla Hendron, a third-year law student at the University of Arkansas, who had attended the Gravette Bible classes as a child, testified that she found the stories that she learned there extremely useful to her as a music major in college: She said, and the court believes her, that

"the stories from the Bible were useful in learning opera ..." and renaissance music. She also said that those lessons taught her about moral matters that were helpful to her in understanding the law.

It is uncontestably true that religious instruction can have useful secular effects. In fact, religion and citizenship are inseparable in many minds, as the quasi-religious fervor attendant on the recent flag-burning case in the Supreme Court attests; and so it is hardly impossible that a person could teach religion with a secular purpose. Indeed, it seems plain upon principle, from the testimony in the case and the circumstances, that the school officials in Gravette were partly motivated by secular purposes in allowing the Bible classes to be taught. But the court also believes that it is inescapably obvious that those officials were at the same time motivated by a desire to teach the rectitude of fundamentalist Christianity. That motive may be infirmity enough under *Lemon*. *See Wallace v. Jaffree*, 472 U.S. 38, 56, 105 S.Ct. 2479, 2489-90, 86 L.Ed.2d 29 (1985). Even if it were not, it has to be clear that a primary effect of these Bible classes was to advance religion. *See id.*

Finally, the court notes that in its view the Gravette school system is entangled with this religious instruction to a prohibited degree. As already noted, the instruction takes place during regular school hours on school property. In impressionable young minds, it must surely seem that the Bible classes are part of the regular curriculum and endorsed by the school. Indeed, an adult mind could easily come to the same conclusion.

### III.

█ It would seem rather plain, therefore, from the testimony heard thus far, that plaintiffs are quite likely to prevail on the merits when the full case comes on to be heard. Indeed, it is not clear what further relevant evidence defendants plan to present, but as they indicated that they

wished to proceed to a full-blown hearing, the court determined that it would do so.[1] Of course, a likelihood of ultimate success is not, by itself, sufficient to engage the court's power to resort to the extraordinary remedy of a preliminary injunction under Fed.R.Civ.P. 65(a). It must, in addition, appear that plaintiffs will suffer irreparable injury if the injunction does not issue; and the court is also required to consider the harm done to the defendants and the general public should the injunction issue. *See Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109 (8th Cir. 1980).

There is considerable and respectable authority to the effect that when a plaintiff alleges deprivation of a constitutional right, then "no further showing of an irreparable injury is necessary." 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2948. Indeed, one court has said that there is no discretion to deny a preliminary injunction "to a person who clearly establishes by undisputed testimony that he is being denied a constitutional right." *Henry v. Greenville Airport Comm'n*, 284 F.2d 631, 633 (4th Cir., 1960). It would seem, then, that the only obstacles in the way of plaintiffs obtaining the preliminary relief sought have to do with the questions of potential harm to the defendant and the public. The defendants certainly have an interest in running the affairs which the people have entrusted to them, unmolested by others except in extraordinary cases; and it cannot be denied that, ordinarily, curricular matters are the exclusive concern of school boards and school officials. So, too, the public interest requires that the ordinary processes of elected government be allowed to go forward in most circumstances. But these considerations seem to collapse in the face of plaintiff's rather strong showing on the merits.

From the preceding considerations, the court concludes that a preliminary injunction ought to issue in this case ordering the

---

**1.** Defendants did not argue at the hearing that they were obliged to allow Bible classes under the "equal access" rule of *Widmar v. Vincent*, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981), nor did they produce testimony from which the court could determine whether the *Widmar* principles were relevant here. The court therefore expresses no opinion on that issue.

defendant to cease its present practice with respect to Bible instruction. An appropriate order will therefore issue.