850 P.2d 1017

**Benjamin and Isabelle LaBALBO, Guardians and Next Friends of their Daughter, Joanne LaBalbo, Plaintiffs–Appellants,**

v.

**Cherie HYMES, Executive Director of the Albuquerque Association for Retarded Citizens, the Albuquerque Association for Retarded Citizens, and John Doe and Jane Doe, Numbers One through Ten, Defendants–Appellees.**

No. 11094.

Court of Appeals of New Mexico.

Jan. 15, 1993.

Certiorari Denied April 2, 1993.

Kathryn M. Wissel, Levy & Geer, P.A., Albuquerque, for plaintiffs-appellants.

Mark J. Klecan, Klecan & Childress, Albuquerque, for defendants-appellees.

Janice D. Paster, Albuquerque, for amicus curiae, Parents Reaching Out, Inc.

Peter Cubra, Albuquerque, for amicus curiae, Protection and Advocacy System.

## OPINION

ALARID, Chief Judge.

We granted plaintiffs' application for an interlocutory appeal from the denial of their application for a preliminary injunction to enjoin defendants from discharging plaintiffs' daughter from a private group home for the developmentally disabled. Plaintiffs also filed a general notice of appeal believing the order practically disposed of the merits of their cause. We consolidate the appeals and treat this as a general appeal for reasons discussed herein.

On appeal plaintiffs argue the trial court abused its discretion by denying their request for a preliminary injunction after finding no irreparable harm to plaintiffs and finding that plaintiffs' claims are not actionable under the Civil Rights Act of 1871, 42 U.S.C.A. § 1983 (West 1981), because no state action was present. On appeal, we review the state action question as a pure ruling of law. Because we hold that a private entity that is under state contract to provide services to mentally disabled persons is a state actor when it makes decisions regarding the treatment and discharge of those persons under its care, we vacate the order denying the requested injunctive relief, reinstate the Section 1983 action and remand for rehearing in light of the legal conclusions expressed in this opinion.

## I.  FACTS

Plaintiffs' developmentally disabled daughter, Joanne, began living at a group home owned by defendant Albuquerque Association for Retarded Citizens (AARC) in January 1984. The home is regulated by the Department of Health and Environment under the Developmental Disabilities Community Services Act, NMSA 1978, §§ 28–16–1 to 28–16–12 (Repl.Pamp.1991) (hereinafter "the Act"), and services are provided pursuant to the Mental Health and Developmental Disabilities Code, NMSA 1978, §§ 43–1–1 to 43–1–25 (Repl.Pamp.1989) (hereinafter "the Code").

On March 24, 1986, Dr. Follingstad, Joanne's treating physician, who had become increasingly worried about his patient's uncontrollable anxieties and excitability and resultant high blood pressure during the previous few years, concluded that he was unable to control her blood pressure in the group home environment and recommended that she be removed. On March 26, 1987, plaintiffs were asked to attend a meeting held the same day. At that meeting, AARC informed them that Joanne would be discharged from the home on April 1, 1987.

Plaintiffs did not seek administrative review of the decision. They proceeded directly to district court and, on March 30, 1987, filed a complaint seeking injunctive relief and damages. Subsequently, while AARC was under a temporary restraining order requiring it to not discharge Joanne, plaintiffs filed an amended complaint seeking preliminary and permanent injunctions as well as damages. On December 2, 1990, the district court denied all requested relief by order providing in pertinent part:

3. The Court's decision as set out herein practically disposes of the merits of this action, or in the alternative this Order involves a controlling question of law, specifically on the issue of state action, as to which there is substantial ground for difference of opinion, and an immediate appeal from the Order may materially advance the ultimate termination of the litigation, and there is no just reason for delay.

4. An appeal of right lies from this Order because as a practical matter it deposes [sic] of the merits, or in the alternative if it does not practically depose [sic] of the merits this Order involves a controlling question of law, specifically the issue of the existence of state action, as to which there is substantial ground for difference of opinion, and an immedi-

ate appeal from the Order may materially advance the ultimate termination of the litigation, and there is no just reason for delay.

Joanne continues to reside in the home, the discharge having been forestalled by a temporary restraining order and a stay pending appeal.

## II. DISCUSSION

The legal issue we address is whether state action exists sufficient for Plaintiffs to maintain a cause of action under Section 1983.

Plaintiffs argue Joanne was impermissibly discharged because she was denied predeprivation procedural due process. Plaintiffs' assertion rests on the grounds that Joanne has a protected liberty interest in retaining her group home placement and that AARC acts under color of state law, thereby making all procedural due process requirements guaranteed by the 14th Amendment to the United States Constitution binding. *See* U.S. Const. Amend. XIV (West 1987). Plaintiffs' position was supported by two amicus curiae briefs filed with this court by New Mexico Parents Reaching Out and New Mexico Protection and Advocacy System.

Defendants argue (1) AARC does not act under color of state law, (2) the in-house discharge procedures followed by AARC provide adequate procedural due process, (3) substantial evidence supported the district court ruling, (4) the plaintiffs failed to exhaust their administrative remedies, and (5) a contract, signed at the time of Joanne's admission to the group home, controlled the rights and responsibilities of the parties in the event of a proposed discharge and all the contract's requirements were met. Because we find the availability of a Section 1983 action to enforce the fundamental civil rights of perhaps our most-fragile class of citizens to be of the utmost public interest, this court properly has jurisdiction over all of the issues relevant to the propriety of a Section 1983 action. SCRA 1986, 12–216(B); *see also Newsom v. Norris*, 888 F.2d 371, 380 (6th Cir.1989) (general review permissible where trial court ruling rests solely on a premise as to applicable law).

### A. *Mootness*

■ As a preliminary matter, defendants suggest that the trial court's decision may be moot because Joanne has retained her placement in the group home and plaintiffs were provided with an opportunity to present evidence on the merits in the district court. We understand defendants to be arguing that the appeal arising out of the denial of the motion for preliminary and permanent injunction is necessarily moot. We disagree. In *Carey v. Piphus*, 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978), the United States Supreme Court held that a deprivation of procedural due process is actionable under Section 1983 without regard to whether there was actual injury or whether the deprivation would have taken place had the proper procedures been afforded from the outset. Accordingly, plaintiffs may have a valid Section 1983 claim even if Joanne remains at the AARC home permanently.

Moreover, defendants do not press the matter strongly and concede that the controlling issue needs resolution for guidance to "agencies such as [AARC]." We agree with this sentiment. *See In re Pernell*, 92 N.M. 490, 493–94, 590 P.2d 638, 641–42 (Ct.App.1979) (mental health patient no longer in hospital under challenged trial court order; appeal not moot because order capable of repetition and of great public importance). Because we determine that this is a matter of great public interest and because plaintiffs' Section 1983 claim may be valid regardless of the denial of their requested injunction, we conclude that the Rule 12–216(B) exceptions may be applicable and proceed to review the merits. *See Mowrer v. Rusk*, 95 N.M. 48, 618 P.2d 886 (1980); *Johnson v. Francke*, 105 N.M. 564, 565 n. 1, 734 P.2d 804, 805 n. 1 (Ct.App. 1987).

### B. *Standards for Issuance of a Preliminary Injunction*

■ In the absence of New Mexico authority concerning the factors a trial court

must consider in ruling on a motion for a preliminary injunction, we turn to federal cases interpreting Federal Rule of Civil Procedure 65, which is similar to SCRA 1986, 1–066. *See State v. Clements*, 108 N.M. 13, 765 P.2d 1195 (Ct.App.1988) (basis for consulting judicial interpretations of federal rule). To obtain a preliminary injunction, a plaintiff must show that (1) the plaintiff will suffer irreparable injury unless the injunction is granted; (2) the threatened injury outweighs any damage the injunction might cause the defendant; (3) issuance of the injunction will not be adverse to the public's interest; and (4) there is a substantial likelihood plaintiff will prevail on the merits. *Tri–State v. Shoshone River Power, Inc.*, 805 F.2d 351 (10th Cir.1986). We review the trial court's decision regarding whether to grant injunctive relief for abuse of discretion. *Padilla v. Lawrence*, 101 N.M. 556, 685 P.2d 964 (Ct.App.1984). The trial court may abuse its discretion by applying the incorrect standard for a preliminary injunction or incorrect substantive law, resting issuance of the injunction on clearly erroneous findings of fact; or applying the standards in a manner that results in an abuse of discretion. 2 J. Moore, J. Lucas, & K. Sinclair, *Moore's Federal Practice* ¶ 65.04[2] (2d ed. 1990). However, if a plaintiff failed to establish one of the required factors, the reviewing court should affirm denial of the injunction. *See Libertarian Party of Texas v. Fainter*, 741 F.2d 728 (5th Cir.1984).

The trial court denied plaintiffs' motion for a preliminary injunction, apparently on the grounds that plaintiffs had not established any possibility of irreparable harm and because they had not demonstrated a substantial likelihood of success on the merits. The lack of irreparable injury finding was apparently based on medical evidence that Joanne should be discharged for health reasons and an absence of evidence that she was deprived of a constitutionally protected right. However, by concluding that AARC did not act under color of state law, the trial court foreclosed the possibility of finding irreparable injury in the form of a constitutionally impermissible deprivation of due process. *See Henry v. Greenville Airport Comm'n*, 284 F.2d 631, 633 (4th Cir.1960) (violation of constitutional right established by undisputed evidence deprives trial court of discretion to deny request for injunction); *Doe v. Human*, 725 F.Supp. 1499, 1502 (W.D.Ark.1989) (court issued preliminary injunction, finding that allegation of deprivation of constitutional right sufficient to establish irreparable harm); 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948 n. 39 (1973) (where deprivation of constitutional right is shown, no further showing of irreparable harm need be demonstrated). Additionally, by determining that plaintiffs had not shown a substantial likelihood of success on the merits because they had not shown that AARC was a state actor, the trial court extinguished plaintiffs' Section 1983 claim. As we discuss, we believe that in reaching this conclusion, the trial court erred in its application of the substantive law.

### C. Section 1983 Action in State Court

Plaintiffs' amended complaint alleged a Section 1983 action for impermissible deprivation of a substantive liberty interest without appropriate procedural due process.[1] The parties agree, and we assume for the purposes of this appeal, that AARC is a private entity. Section 43–1–9 (providing that no private contractor providing services under the Code is an entity of state government); *accord Armijo v. Dep't of Health and Env't*, 108 N.M. 616, 775 P.2d 1333 (Ct.App.1989) (private contractor

---

1. Plaintiffs have alleged that a substantive, protected liberty interest arises from the explicit and mandatory character of the language used by the New Mexico Legislature in the Code and in the Act. Plaintiffs predicate their denial of procedural due process claim on state statutory language, as well as on regulatory language issued by both the state and federal governments relating to the termination of services for residential clients. Plaintiffs have also argued the discharge was in contravention of an admission contract containing specific, mandatory discharge procedures. Plaintiffs also alleged in their amended complaint that the discharge violated rights secured by the New Mexico Constitution. However, the state constitutional argument appears to have been abandoned on appeal.

not state entity for Tort Claims Act purposes).

■ To recover under Section 1983, a plaintiff must establish two elements: (1) that the defendants acted under color of state law, and (2) that defendants' action caused them to be deprived of a right secured by the Federal Constitution or the laws of the United States. *Lugar v. Edmundsun Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753–54, 73 L.Ed.2d 482 (1982); *Stephenson v. Esquivel*, 614 F.Supp. 986, 989 (D.N.M.1985). We assume without deciding that Plaintiffs have a right secured by the constitution or the laws of the United States.[2] We turn to the dispositive issue below, the question of state action.

### 1. *State Action*

To constitute state action, "the deprivation must be caused by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor." "[S]tate employment is generally sufficient to render the defendant a state actor." It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State.

*West v. Atkins*, 487 U.S. 42, 49–50, 108 S.Ct. 2250, 2255–56, 101 L.Ed.2d 40 (1988) (citations omitted).

■ As an initial matter, defendants correctly assert that action undertaken by a private entity is not state action and does not implicate a Section 1983 claim. *See* § 1983; *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948) (Fourteenth Amendment no shield against private conduct). AARC correctly notes that the Act also provides that AARC is a private contractor and not a state entity. *See* § 28–16–11. We believe Section 28–16–11 expresses legislative intent as to the applicability of the New Mexico Tort Claims Act, NMSA 1978, Sections 41–4–1 *et seq.* (1989 Repl.Pamp.) (TCA), and does not go directly to the issue of whether any particular action taken by a private contractor providing services under the Code and the Act constitutes state action. *See Wells v. Valencia County*, 98 N.M. 3, 644 P.2d 517 (1982) (distinguishing tortious conduct under TCA and deprivation of rights secured by the Federal Constitution for Section 1983 purposes); *Armijo v. Dep't of Health & Env't*, 108 N.M. 616, 775 P.2d 1333 (Ct.App.1989). The legislature may no more demand that violation of state procedural protections constitutes a federal constitutional deprivation than it may preclude a judicial determination under federal law principles that the acts of its agents constitute state action for purposes of Section 1983. *See West v. Atkins. Compare* § 28–16–7 (holding contractors to constitutional standard) *with* § 28–16–11 (contractor not a state entity).

Accordingly, the United States Supreme Court has consistently found that a private entity may be characterized as a state actor for purposes of Fourteenth Amendment

---

**2.** The assumption that Joanne has a substantive liberty interest is well grounded in the provisions of the Act and the Code. First, Section 43–1–8 contains plain and unambiguous language indicating a statutory right to appropriate habilitation services pursuant to an individualized treatment plan and consistent with the least drastic means principle exists. Section 43–1–9 requires that each residential client have an individualized habilitation plan. The statute requires that the plan must include input from the client, to the maximum possible extent. § 43–1–9(B); *see also* § 43–1–9(C)(1) (requiring written statement of client's specific needs); § 43–1–9(C)(3) (written timetable for habilitation goal attainment); § 43–1–9(C)(4) (requiring statements of goals, rationales and services necessary to achieve habilitation goals); § 43–1–9(C)(6) (criteria for discharge and projected discharge date). Finally, Section 43–1–9(E) allows the habilitation plan to be altered only after notice and comment to the client and the client's guardian. The individualized nature of the treatment plan, the *personal* timeline that controls habilitation service delivery, the inclusion of discharge as an element of habilitation, and the notice-and-comment requirements prior to substantial alteration indicate legislative intent to create a protected interest in receiving state-funded habilitation services. This court has previously made clear that state law can create a substantive right entitled to federal protection. *See Garcia v. Las Vegas Med. Ctr.*, 112 N.M. 441, 816 P.2d 510 (Ct.App.1991).

analysis where the private party jointly participated with the state or its agents in the challenged action. *Lugar*, 457 U.S. at 941, 102 S.Ct. at 2755–56.

> Private parties are state actors,
> [I]f the State creates the legal framework governing the conduct, if it delegates its authority to the private actor, or sometimes if it knowingly accepts the benefits derived from unconstitutional behavior. Thus in the usual case we ask whether the State provided a mantle of authority that enhanced the power of the harm causing individual.

*National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 192, 109 S.Ct. 454, 461–62, 102 L.Ed.2d 469 (1988) (citations omitted), and, "[T]he inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may fairly be treated as that of the State itself." *Id.* at 192 n. 12, 109 S.Ct. at 462 n. 12 (citations omitted) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974)). The Court later said:

> It is, of course, true that a State may delegate authority to a private party and thereby make that party a state actor. Thus, we recently held that a private physician who had contracted with a state prison to attend to the inmates' medical needs was a state actor.

*Id.* at 195, 109 S.Ct. at 463–64 (citing *West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)).

■ To demonstrate the required nexus in this case, plaintiffs alleged, "The state has clearly delegated the authority to provide this care of these vulnerable citizens to private entities through contracts, statutes, regulations, and the expenditure of significant sums of public monies." AARC has defended on the premise that actions undertaken pursuant to the "delegated authority" by a private entity under contract to the state to provide services such as AARC provides are not state action.[3] We agree with Plaintiffs and disagree with AARC.

The required nexus is best exemplified by the trilateral relationship between the state, the private contractor, and the client established under the Act and the Code. *See West v. Atkins*, 487 U.S. at 56, 108 S.Ct. at 2259 ("Whether a physician is on the state payroll or is paid by contract, the dispositive issue concerns the relationship among the state, the physician, and the prisoner."); *Carnes v. Parker*, 922 F.2d 1506, 1509 (10th Cir.1991) (private entity under contract with public trust acts under color of state law) (citing *Milo v. Cushing Mun. Hosp.*, 861 F.2d 1194 (10th Cir.1988)).

New Mexico does not distinguish between clients receiving services at private or public facilities and accepts the ultimate

---

**3.** It is well settled that once a state has voluntarily assumed a duty to provide an entitlement such as habilitation services that the state has "considerable discretion" to set the contours of its responsibility. *Romeo v. Youngberg*, 457 U.S. 307, 317, 102 S.Ct. 2452, 2458-59, 73 L.Ed.2d 28 (1982). It is equally well settled that when a person is institutionalized or in some other way is wholly dependent on the state, the federal constitution imposes a duty on the state to ensure minimal habilitation conditions are met. *Id.; West v. Atkins*, 487 U.S. at 56, 108 S.Ct. at 2259 ("Whether a physician is on the state payroll or is paid by contract, the dispositive issue concerns the relationship among the state, the physician, and the prisoner."). Moreover, once the right, entitlement or benefit is conferred, the state "may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1492-93,

84 L.Ed.2d 494 (1985); *see also Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) (denial of federal statutory entitlement enforceable by § 1983 action); *Goldberg v. Kelly*, 397 U.S. 254, 262 at n. 8, 90 S.Ct. 1011, 1018 at n. 8, 25 L.Ed.2d 287 (1970); *but see 1st National Bank of Omaha v. Marquette National Bank*, 636 F.2d 195 (1980) (rights incidental to National Bank Act not in the nature of civil rights and are not enforceable under § 1983), *cert. denied*, 450 U.S. 1042, 101 S.Ct. 1761, 68 L.Ed.2d 240 (1981).

It is also well settled that if Joanne were admitted to a state-operated hospital, actions and decisions undertaken by employees relating to her habilitation would be state action sufficient to state a claim under § 1983. *See West v. Atkins; see also* N.M. Const. Art. XIV; NMSA 1978, Chap. 23 (Repl.Pamp.1987 & Cum.Supp. 1991); *Lombard v. Eunice Kennedy Shriver Ctr. for Mental Retardation, Inc.*, 556 F.Supp. 677 (D.Mass.1983).

responsibility to ensure protection of the statutory and constitutional rights of *all* clients. *See* § 43–1–3(S) (habilitation program defined; no distinction between state-operated and state-funded places of program delivery); § 43–1–3(B) (definition of client); § 43–1–13(B) (state-operated or state-funded evaluation facility must prepare habilitation plan consistent with all statutory criteria); § 43–1–13(C) (state-operated or state-funded entity may petition court for extended placement).

> *Each resident client* receiving developmental disabilities services shall have the right to prompt habilitation services pursuant to an individualized habilitation plan and consistent with the least drastic means principle.

§ 43–1–8 (emphasis added.) Such services are provided directly by the state at state-operated facilities. *See* N.M. Const. art. XIV; § 23–5–1. Community-based services are provided through contracts with private "contractors capable of providing habilitation and other needed services." § 28–16–6. Contract services must be "consistent with and in furtherance of the objectives of the state plan." *Id.* The state plan requires "all major state agencies *providing or funding services*" to submit plans to the Developmental Disabilities Planning Council. § 28–16–5 (emphasis added). Submissions are made to ensure that each agency shall:

> provide for such services as are required within the scope of each respective agency's applicable federal and state laws and regulations to achieve the goal of facilitating clients to maximize their potential and live as independently as possible in their own homes and communities and to achieve productive lives through involvement in integrated service settings.

§ 28–16–5. Finally, the state sets standards for client services without regard to whether it funds or provides the services. "The department shall promulgate regulations as are appropriate to ensure compliance with recognized minimum professional standards for services and the constitutional and statutory rights of clients. Contractors providing services shall comply with these regulations and standards as a condition of payment and continuation of contract." § 28–16–7. Accordingly, it is clear from the above analysis that the state sets regulations for state agencies (services it provides) and statutorily binds all private contractors (services it funds) to the same standards.[4]

Even without this broad statutory language indicating that, like state agencies making discharge decisions, private contractors providing state-funded services are state actors when making discharge decisions, Section 28–16–8 provides that "the department shall establish minimum requirements for admission, discharge, and withdrawal of clients for services funded by the department." Thus the state has reserved to itself exclusive authority to control the contours of the very action at issue in this case, namely discharge. A discharge decision, whether made directly by the state or by a private contractor providing services funded by the state, is subject to all binding state statutory sections and regulations and is among the most-regulated of all treatment decisions made by the private contractor. *See* § 28–16–9 (each agency has responsibility and authority to ensure compliance with its regulations for services it provides or funds).

---

**4.** Several other sections of the Code support our conclusion that the legislature intended that there be no material distinction in the scope of state oversight between state-operated facilities and state-funded facilities when providing services. *See, e.g.,* § 43–1–3(B) (definition of client includes voluntary admissions, guardian admissions or court-ordered admission to developmentally disabled program); § 43–1–3(I) (definition of evaluation facility includes state-funded and state-operated facilities); § 43–1–4 (legal representation under Code for all clients); § 43–1–6 (personal rights); § 43–1–7 (right to treatment); § 43–1–8 (right to habilitation); § 43–1–9 (individualized habilitation or treatment plan); § 43–1–10 (emergency police power authority to detain without court order given to private "evaluation facility" upon certification by licensed physician); § 43–1–15 (emergency administration of psychotropic drugs permissible upon certification of licensed physician); § 43–1–23 (client right to seek redress under Tort Claims Act). These statutory provisions cover private facilities delivering state-funded services.

We finally look to the purposes of the Act to demonstrate that the legislature's provision that the department be authorized to use private contractors rather than state-operated facilities reflects a treatment preference rather than an attempt to diminish the legal protections afforded clients of state-funded services as against those in state-operated facilities. Section 28–16–2 states:

It is the purpose of the legislature in enacting the Developmental Disabilities Community Services Act [28–16–1 to 28–16–12 NMSA 1978] to authorize the health and environment department to plan and coordinate developmental disabilities community services in the state and to declare that priority shall be given to the development and implementation of community-based services for developmentally disabled minors and adults, which will enable and encourage such individuals to achieve their greatest potential for independent and productive living, which will enable them to live in their own homes and apartments or in facilities located within their own communities and which will assist clients to be diverted or be removed from unnecessary institutional placements.

From this statement of intent it is clear that the state coordinates all community service delivery with the intention of avoiding institutional placements and of encouraging community-based services. *Accord* § 23–7–1. Conversely, we note that there is no expression of intent that the statutory and constitutional rights of clients receiving the community-based services should receive less protection than those in state-operated institutions. The legislature intended that community-based services be provided, and in doing so, did not intend to insulate private service providers from state-action scrutiny. *Accord* § 28–16–11.

To avoid the procedural constraints imposed by the Fourteenth Amendment defendants rely primarily on the cases of *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), and *Rendell–Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), to establish that the challenged discharge decision in this case is not sufficiently linked to AARC's "delegated authority" under its state contract to constitute state action.

In *Blum,* the plaintiffs objected to patient-transfer decisions initiated without certain procedural safeguards. The United States Supreme Court addressed whether private nursing homes were state actors when determining whether or not patients were receiving the medically necessary level of care. In *Blum,* the consequence of a determination that a patient was receiving more care than medically necessary was that the state refused to pay for the higher level of care and mandated that the patient be transferred to a lower-care level.

Finding that the challenged decision was not among those controlled by the state's regulatory oversight, the Court rejected the state-action assertion. The Court focused on the "gravamen of the plaintiff's complaint" to determine exactly what conduct was challenged and the evidence in the record demonstrating that the challenged conduct was compelled by the state. *Id.* at 1003, 102 S.Ct. at 2785. The Court found the challenged decision was made by a medical professional according to rules of conduct not promulgated by the state. This rendered the decision of the state to transfer the affected patients to lower care levels simply a response to the physician's decision and not an action compelled by the state. *Id.* at 1005, 102 S.Ct. at 2786. *Blum* is unavailing to defendants in this case because the state has reserved by statute the exclusive right to set the contours of discharge decisions. *See* § 43–1–9(C)(6) (discharge statutory part of habilitation); § 43–1–9(E) (notice and comment required before major amendment of habilitation plan; decision involves non-medical persons); *see also Lombard v. Eunice Kennedy Shriver Ctr. for Mental Retardation, Inc.,* 556 F.Supp. 677, 680 (D.Mass. 1983) (where function is exclusive province of state, general rule that act of private party must be compelled by rule of state to constitute state action held inapplicable).

In *Rendell–Baker,* the United States Supreme Court considered whether an employment decision, apparently unrelated to

the well-being of the students, made by a private school that received most of its funding from public sources and was subject to state regulation in several respects was state action. The Court considered the factors it had found to be significant in *Blum* and similarly concluded that the school's decision to discharge employees was not state action. It first determined that the school's receipt of public funds for student tuition did not make the school a state actor for the purpose of making employment decisions because "the relationship between the school and its teachers and counselors is not changed because the State pays the tuition of the students." 457 U.S. at 840–41, 102 S.Ct. at 2770–71. The Court also found that the state's extensive regulation of the school did not make it a state actor because:

> Here, the decisions to discharge the petitioners were not compelled or even influenced by any state regulation. Indeed, in contrast to the extensive regulation of the school generally, the various regulators showed relatively little interest in the school's personnel matters.

*Id.* at 841, 102 S.Ct. at 2771.

The Court also rejected the argument that the school was performing a public function, and thus was a state actor, because there was no indication the state legislature intended to make the education of maladjusted high-school students the exclusive province of the state. *Id.* at 842, 102 S.Ct. at 2772. The Court also determined that there was no symbiotic relationship between the state and the school because there was no showing that the state profited from the private party's discriminatory conduct. *Id.* at 842–43, 102 S.Ct. at 2772–73.

We consider *Rendell–Baker* distinguishable from the situation in the appeal before us. We are dealing with the decision by a private contractor providing state services to discharge a patient entitled to receive those services, a situation that would be more analogous to a decision by the private school in *Rendell–Baker* to discharge a student, rather than an employee. In similar situations, physicians providing medical services pursuant to contracts with the state have been found to be state actors when making decisions regarding patients. *West v. Atkins.*

Moreover, in contrast to the finding in *Yaretsky* that the challenged decision was essentially a medical one made according to medical decision-making parameters, the statutory language used by our legislature relating to discharge decisions stands in stark contrast to those sections where the legislature intended that a physician could be the sole decision-maker. *See* § 43–1–10(A)(4) (delegation of police power to licensed physician in emergency); § 43–1–10(E) (same); § 43–1–11(A) (delegation of *parens patriae* authority to licensed physicians to seek commitment for treatment and evaluation); § 43–1–12(A) (physician may seek extended commitment); § 43–1–14(C) (physician may seek involuntary commitment); cf. *Armijo v. Dep't of Health and Env't* (for TCA purposes challenged decision medical in nature.).

Moreover, careful analysis of these two cases indicates that the funding of a private entity to perform under public contract duties statutorily imposed on the state by act of the legislature may be a sufficient indicator of state involvement to implicate the state-action doctrine where the contours of duties attendant to the receipt of such funds affect the decision-making process being challenged to the extent that the decision arises out of the attendant constraints and can therefore be said to be fairly attributable to the state. *See* § 28–16–7 (standards for services); *see also West v. Atkins* (private physician under contract to the state to provide health care services to prison inmates acts under color of state law while treating inmates because his agenda is the state's agenda); *South Dakota v. Dole*, 483 U.S. 203, 213, 107 S.Ct. 2793, 2799, 97 L.Ed.2d 171 (1987) (O'Connor, J., dissenting) (Congress may condition receipt of federal funds if condition relates to purpose for which the funds are expended); *State ex rel. Coll v. Carruthers*, 107 N.M. 439, 444, 759 P.2d 1380, 1385 (1988) (legislature may properly condition use of funds); *State ex rel. Sego v.*

*Kirkpatrick,* 86 N.M. 359, 366, 524 P.2d 975, 982 (1974) (state legislature appropriates state funds and may impose conditions and limits); N.M. AG Op. No. 80–40 (1980).

■ In sum, if the state provides developmental disability services by delegating those responsibilities to a private entity, while retaining the right to determine discharge terms and the responsibility to protect patients' constitutional and statutory rights, a sufficient nexus between the private entity's decision and the state has been demonstrated so that the private entity's discharge decision will be considered state action for purposes of maintaining a Section 1983 suit. *See Carnes v. Parker,* 922 F.2d 1506 (10th Cir.1991); *Society for Good Will to Retarded Children, Inc. v. Cuomo,* 737 F.2d 1239 (2d Cir.1984) (discharge of employee); *McAdams v. Salem Children's Home,* 701 F.Supp. 630, 635 (N.D.Ill.1988) (rejecting argument that private contractor providing juvenile care not state actor); *Fialkowski v. Greenwich Home for Children, Inc.,* 683 F.Supp. 103, 105 (E.D.Pa.1987); *Davenport v. Saint Mary Hospital,* 633 F.Supp. 1228, 1234 (E.D.Pa.1986); *Lombard v. Eunice Kennedy Shriver Ctr. for Mental Retardation, Inc.,* 556 F.Supp. at 680; *Kentucky Ass'n for Retarded Citizens v. Conn,* 510 F.Supp. 1233, 1250 (W.D.Ky.1980) (rejecting private mental hospital contractor's argument that it is not subject to suit under Section 1983 for want of state action), *aff'd,* 674 F.2d 582 (6th Cir.), *cert. denied sub nom. Bruington v. Conn,* 459 U.S. 1041, 103 S.Ct. 457, 74 L.Ed.2d 609 (1982); *Ruffler v. Phelps Memorial Hosp.,* 453 F.Supp. 1062 (S.D.N.Y.1978).

### D. *Section 1985 Action*

■ Plaintiffs' claim in count IV alleging deprivation of equal protection under 42 U.S.C.A. Section 1985(3) (West 1981) requires a showing of state-action which is the result of a racial or other class-based invidious and discriminatory purpose. *See Williams v. St. Joseph Hosp.,* 629 F.2d 448 (7th Cir.1980). We are not required to address the correctness of the trial court's decision with respect to this claim because plaintiffs have not presented any arguments or authority to support a contention that the trial court erred in finding that plaintiffs failed to present evidence to substantiate this claim. *See Wilburn v. Stewart,* 110 N.M. 268, 794 P.2d 1197 (1990) (issues raised only in passing and without citation to authority not considered on appeal).

### E. *Procedural Due Process Requirements in This Case*

■ The record reveals plaintiffs had at a maximum, four days to respond to the discharge decision. Because the trial court concluded AARC did not act under color of state law, it is unclear if the court considered the application of cases holding state actors must provide some meaningful pretermination due process prior to depriving a person of any significant protected interest. *See Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (cases cited therein). However, failure to comply with all state statutory and regulatory provisions may not necessarily constitute a deprivation of due process protections guaranteed by the 14th Amendment sufficient to maintain a Section 1983 action. *Garcia v. Las Vegas Med. Ctr.,* 112 N.M. 441, 816 P.2d 510 (Ct.App.1991). It is clear, however, that in the context of this case four days is inadequate. *See In re Bunnell,* 100 N.M. 242, 245, 668 P.2d 1119, 1122 (Ct.App.1983) (in issues involving civil commitment protection of client's rights requires adequate preparation time).

Moreover, AARC admitted in its brief filed with this court that by the time of the March 26, 1987 meeting, AARC had *already determined that discharge was necessary.* Under these circumstances, with inadequate notice and apparent inadequate opportunity to participate meaningfully in the decision to discharge, the meeting could not satisfy even a minimal pretermination due process requirement. Such predetermination under these facts is inconsistent with minimal federal due process as well as with the Act and the Code's requirements.

### 1. *Contractual Provisions*

 At the time of Joanne's admission to AARC's residential program, plaintiffs entered into a "Consent Agreement" (contract) with AARC. Defendants have argued on appeal that the contract constitutes written consent to Joanne's discharge and actual notice of the discharge. This contention is without merit.

The contract contains provisions permitting discharge at the request of the guardian, upon proper notice and a determination, presumably by AARC, that the discharge does not violate any legal or civil right possessed by the client. AARC may seek to discharge a residential client upon appropriate notice and a determination by AARC that continued residence would not be in the best interest of the client *or* other residents of the facility. The contract also provides that AARC may discharge a residential client without notice if a determination is made that "eminent [sic] harm could result to the resident or other residents" if discharge is not immediately sought.

Of these provisions we merely note that, having determined a constitutionally protected interest exists, the contract terms may not operate so as to frustrate an assertion of rights arising out of federal due process protections for the underlying right. *See Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (government benefit may not be denied if denial infringes a constitutionally protected interest); *Carnes v. Parker.* We particularly note that the contract does not require a determination that a discharge proposed by AARC is consistent with all statutory and constitutional rights of the client and would appear to conflict with Section 28–16–7 which requires *all actions* by private service providers be in such compliance. *See United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954) (failure to adhere to properly promulgated regulations can constitute due process violation); *Arzanipour v. I.N.S.,* 866 F.2d 743 (5th Cir.) (per se denial of due process may arise only where regulation is required by statute or constitu-tion), *cert. denied,* 493 U.S. 814, 110 S.Ct. 63, 107 L.Ed.2d 30 (1989).

## III. CONCLUSION

Because of the trial court's greater familiarity with the record and the controlling regulations we think it appropriate that the trial court determine in the first instance the application of the legal opinions expressed herein to the facts of this case. Accordingly, we vacate the order denying the application for preliminary injunction. We reinstate the Section 1983 action and order a stay of any discharge procedures until such time as there is a review on the merits of plaintiffs' Section 1983 action consistent with this opinion.

IT IS SO ORDERED.

APODACA and CHAVEZ, JJ., concur.